**Robert Craig COX, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–95–387–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 30, 1996.

Ken Mahaffey, Austin, Pat Morris, Decatur, for appellant.

Barry S. Green, District Attorney, Lindy Borchardt, Assistant District Attorney, for state.

Before RICHARDS, BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

A jury convicted Robert Craig Cox of aggravated robbery and also found one enhancement paragraph to be true. The jury assessed punishment at life imprisonment and a $10,000 fine, and Cox appeals upon six points of error. Finding no reversible error, we affirm.

## SECURITY RESTRAINT

■ The first point of error asserts that Cox was denied the presumption of innocence when he was compelled to stand trial while wearing a security leg brace that the jury noticed and inquired about during delibera-tions. The harm a defendant suffers when the jury sees him in handcuffs or shackles is that his constitutional presumption of innocence is infringed. *Cooks v. State*, 844 S.W.2d 697, 722 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Long v. State*, 823 S.W.2d 259, 282 (Tex.Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). To enable an appellate court to determine whether the trial court abused its discretion by requiring the defendant to appear in restraints, the record on appeal must clearly and affirmatively reflect the trial judge's reasons for imposing the restraint. *Long*, 823 S.W.2d at 282.

■ The record is silent about the trial judge's reasons for making Cox wear the item, but the State's brief concedes that the item was placed on him for security reasons. The trial court abused its discretion and erred by not stating reasons on the record. *Id.* But, even if there was abuse of discretion, reversal may not be necessary if the abuse was harmless. *Cooks*, 844 S.W.2d at 722. Accordingly, we have reviewed the record to determine whether the error contributed to Cox's conviction or punishment, beyond a reasonable doubt. We have applied the standards of *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989), which are that a reviewing court:

> should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications.

> Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.* at 587.

The source and nature of the error was the lack of recorded findings by the trial judge of reasons for Cox to wear a restraint during his trial. The State did not emphasize the fact that appellant was restrained. We are not persuaded beyond a reasonable doubt that this circumstance had any collateral implications. We find nothing in the

record to establish that any juror gave any weight to that particular error by the trial court. Contrary to Cox's arguments, we find no evidence that the jury recognized that the appliance he wore was intended for security purposes or to shackle him. It was worn inside the pant leg, and only the end of the device was visible. The sole evidence that jurors even noticed the device was that during deliberations they sent the judge a note containing three questions. The first question was:

Why is defendant wearing a *brace?* [Emphasis added.]

The other two questions were on different subjects. The trial judge replied:

The Court, under the law, is not permitted to answer the questions you have presented. Please consider only the evidence which has been presented and the instructions that have been given you, and continue with your deliberations.

▪ The three ways appellate courts have identified harm to a defendant who is restrained during trial are: (1) prejudice felt by jurors who conclude that because a defendant is shackled the court has already decided that he is guilty, dangerous, and untrustworthy, (2) a restraint may interfere with the defendant's mental faculties and ability to communicate with counsel during trial, and (3) restraints are an affront to a court and its proceedings. *See Brown v. State,* 877 S.W.2d 869, 871 (Tex.App.—San Antonio 1994, no pet.). The record before us does not demonstrate that any of those harmful effects accrued to Cox.

▪ Cox is not required to prove that the jury was prejudiced against him as a result of seeing the edge of some device under the cuff of his pant leg, but absent evidence that the jury actually *recognized* that the device was a security restraint, we will not conclude that Cox has been harmed. *Cooks,* 844 S.W.2d at 723. The State argues, and we agree, that by itself the record does not establish whether the device was worn for security reasons, medicinal ones, or for some other purpose. A "brace" may be worn as support for a weak or injured limb. The record does not reveal whether the jury's inquiry was due to prejudice, sympathy, or mere curiosity. In order to presume a motive behind the jury's question, we would have to indulge in speculation, and we will not. It is plain that the State did not suggest nor emphasize to jurors that Cox was restrained or was considered a security risk during the trial, and we conclude that declaring the trial court's error harmless upon the facts of this case would not encourage the State to allow repetition of the error with impunity. Having applied the *Harris* standards to the record, we find that the trial court's error of allowing Cox to be restrained, without stating for the record the reasons for Cox to wear a restraint, was harmless beyond a reasonable doubt. The first point of error is overruled.

## OPENING THE DOOR

Point of error number two asserts that the court violated TEX. R. CRIM. EVID. 403 by erroneously admitting evidence about Cox's compulsive and *illegal* gambling activities. He argues that the probative value of that evidence was outweighed by the danger of unfair prejudice. Cox contends that the evidence lacked probative value because it was not useful in proving that he committed the aggravated robbery. Eyewitnesses identified Cox as the person who entered the store and pointed a gun at them, and he argues that there was no proof that he gambled or paid any debts with the money taken in the robbery. Cox complains that evidence of his gambling was offered simply as proof that he has a general moral weakness and a propensity to engage in criminal activity.

▪ The State responds that Cox was gainfully employed, earning $28,000 per year plus full benefits at the time of the robbery, but the fact that he owed debts because of his gambling supplied a motive for robbery. Evidence of motive is always admissible because it is relevant as a circumstance tending to prove the commission of an offense. *Bush v. State,* 628 S.W.2d 441, 444 (Tex.Crim.App. 1982). Witness Terry Lynn Caldwell testified that she and Cox worked for the same company and that he was her direct supervisor. The robbery for which Cox was indicted happened in November 1994. When the

prosecutor asked Caldwell whether in October 1994 Cox had told her "of his gambling debts," Cox requested and was granted a bench conference. There he objected to any inquiry by the prosecutor about "illegal" gambling by Cox because of its potential for unfair prejudice in violation of TEX. R. CRIM. EVID. 403. The prosecutor's question had not asked about "illegal" gambling and the objection was overruled after the judge instructed the prosecutor not to ask about illegal gambling.

When testimony resumed, the prosecutor asked about Cox's "gambling debts." Caldwell testified that the amount of those debts was in excess of $1,400 or $1,500 and that Cox had said he planned to go to the Isle of Capri Casino in Louisiana to try to win enough money to pay off the debts he owed. Caldwell told the jury that when Cox returned from Louisiana, he said he had lost all the money he had taken with him. Without objection, Caldwell testified that Cox "had a pretty bad gambling problem." Later cross-examination of Caldwell by Cox's attorney included the following exchange:

> Q. This gambling debt that you say Mr. Cox told you about in October 1994, that was a legal gambling debt, was it not?
>
> . . . .
>
> A. My expertise in what would be legal and not legal in that county as far as gambling debts, I couldn't honestly tell you.
>
> Q. Well, did he owe the Isle of Capri Casino?
>
> A. No.
>
> Q. Who did he owe?
>
> A. He owed some other people in the county, Collin.
>
> . . . .
>
> Q. Was it a bookie?
>
> A. That could be the terminology used for that.
>
> . . . .
>
> Q. Well, a bookie is not illegal, is he?
>
> A. Again, I have no expertise in gambling.

The jury then left the courtroom at the request of Cox's attorney. Out of the jury's presence, he objected that the State's questions about Cox's "illegal" gambling had forced him to pursue the topic of illegal gambling on cross-examination and that the court had not given him an opportunity for a hearing outside the jury's presence to evaluate the evidence under Criminal Evidence Rule 403. The judge overruled the objection, stating:

> Right. Let me tell you what the Court ruling was in prior conference and that was that the State would not elicit from any witness that the gambling that was done was illegal and they did not. They elicited that there was gambling. There was absolutely no testimony as to whether or not it was legal or illegal.
>
> That, Mr. Morris, was elicited by you and if you're objecting to that testimony at this time, it is simply overruled. Because you elicited it. . . .
>
> At the close of the State's Direct Examination of this witness, the Court recalls that the only testimony about specific gambling was Isle of Capri Casino which is a legal place to gamble and nothing was testified to that any gambling was illegal.

■■■■■■ Clearly, the court's admission of evidence about gambling through "bookies" was not error because the only questions about possible "illegal" gambling were those asked by Cox in his cross-examination of Caldwell. He may not successfully challenge evidence that he introduced at trial. *Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993). A party may not invite error, then complain about it on appeal. *Hill v. State*, 881 S.W.2d 897, 907 (Tex.App.—Fort Worth 1994), *aff'd*, 913 S.W.2d 581, 586 (Tex.Crim. App.1996); *Tucker v. State*, 771 S.W.2d 523, 534 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). Once Cox opened the door on the subject of illegal gambling, it became a proper matter for the jury to consider even though the evidence might not otherwise have been admissible. *Gilbert v. State*, 874 S.W.2d 290, 297 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Hughes v. State*, 850 S.W.2d 260, 263 (Tex.App.—Fort Worth 1993, pet. ref'd).

When witness Cindy Hawkins later told the jury that she had loaned Cox several thousand dollars for his gambling, Cox's objection "under 403 probative versus prejudicial regarding gambling" was overruled. Without objection, Hawkins testified that Cox "had a gambling problem." Even when inadmissible evidence is erroneously admitted, the error is cured when the same evidence comes in without objection elsewhere at trial. *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). That principle requires a complaining party to object each time allegedly inadmissible evidence is offered, else the objection is waived. *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App.1984).

Because the trial court did not err by admitting the evidence of Cox's gambling habits, we need not reach the issue of whether the prejudicial effect of that evidence outweighed its probative value. The second point of error is overruled.

### ENHANCEMENT PROOF

Point of error number three complains that in the punishment phase of the trial, the evidence was insufficient to demonstrate the enhancement counts alleging that Cox had three prior convictions in California, one for kidnapping and two for assault with a deadly weapon. To prove the California convictions, the prosecutor introduced the California abstract of judgment (State's exhibit 18) and the California "pen packet" (State's exhibit 18A), as official records of Cox's convictions in that state. Fingerprint expert Robert Atkins, Supervisor of the Crime Lab of the Denton County Sheriff's Department, testified that the fingerprints contained in the California abstract of judgment are those of Robert Craig Cox, the defendant in this case.

For an out of state pen packet to suffice in Texas as evidence of a prior criminal record at the punishment phase of a trial, the State must either prove or ask the trial court to take judicial notice of what the sister state considers sufficient documentary proof of a final conviction or the foreign documents must be the functional equivalent of a Texas

judgment. *Langston v. State,* 776 S.W.2d 586, 588 (Tex.Crim.App.1989). Here, the State asked the trial court to take judicial notice that section 969b of the California Penal Code, and California case law, *People v. Lizarraga,* 43 Cal.App.3d 815, 118 Cal. Rptr. 208, 212 (1974), allow California prosecutors to prove a prior conviction by introducing the abstract of judgment. Cox asserts that the enhancements were not proven beyond a reasonable doubt because the felonies he is alleged to have committed in California are shown in State's exhibits 18 and 18A only by the abbreviations "kidnap," "ADW-pistol," and "ADW-knife." Cox cites *People v. Morton,* 41 Cal.2d 536, 261 P.2d 523, 526 (1953) for the principle that under California law, unexplained abbreviations are insufficient to prove actual convictions that are alleged for enhancement purposes. Cox argues that the prosecutor offered the jury no evidence to explain the three "abbreviations."

As grounds for enhancement, however, the State is only required to prove one prior conviction even though it has alleged others. TEX.PENAL CODE ANN. § 12.42(c) (Vernon 1994); *State v. Delgado,* 825 S.W.2d 744, 746 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Turner v. State,* 750 S.W.2d 48, 51 (Tex.App.—Fort Worth 1988, no pet.). The State argues persuasively that "kidnap" is not an abbreviation, but is simply the root word of "kidnapping" and that "kidnap" is to "kidnapping" what "murder" is to "murdering." The jury's verdict on punishment found that Cox is a *repeat* offender which means that they found that he had been *once* before convicted of a felony. TEX.PENAL CODE ANN. § 12.42(c) (Vernon 1994). Because the exhibits introduced by the State adequately proved that Cox had a prior felony conviction in California for kidnapping, it did not matter whether the State offered proof to explain the abbreviations "ADW-pistol" or "ADW-knife." Point of error number three is overruled.

### "BAD ACTS"

In the punishment phase of the trial, law enforcement officers Irvin Smothers and Jeff Ashton testified that Cox's reputation

for being a lawful and peaceful person was bad. Point of error number four is that the court erred in that phase of the trial by admitting the State's evidence of an extraneous wrongful act by Cox because the State did not prove Cox's culpability for that conduct beyond a reasonable doubt. The conduct was the subject of testimony by Rhonda Beck. While driving to her home in Plano around 1:00 a.m. Beck noticed Cox following her in "a small white truck and it had a yellow light on top and on the side panel it had, like, SMP or some initials on the side." Cox was then working for a company named "SMP." Beck drove into a parking lot of her apartment complex, and Cox parked his truck nearby. She got out and saw Cox walk toward her. She quickly walked to her apartment, went inside, and locked the doors. Through a peephole, she could see Cox outside and watched while he walked up the sidewalk to her door. She testified that "then I saw his shoulder in the peephole and that's when I backed up from the door ... I mean he was like right there." She then "heard the door jiggle, the doorknob jiggle slowly," and she called the police.

Plano police officer Susan Baumert responded to the call and found Cox's truck parked at the apartment complex, but could not find him. She moved her police car and was turning around to hide nearby when Plano police officer Daniel Curtis drove up and told her that someone was driving the truck away. The officers followed, stopped the truck and learned that Cox was driving it. After talking with him and trying unsuccessfully to obtain facts about his identity, they arrested him on charges that he had failed to identify himself to a police officer and had failed to obtain a Texas driver's license within 30 days of becoming a Texas resident.

Cox argues that his act of following Rhonda Beck and going to her door do not show a crime or the culpability to commit a crime. He complains that the State is trying to bootstrap admissibility of the evidence by simply calling the conduct a "bad act" instead of a crime. Nevertheless, *in the punishment phase of a trial, the State is entitled to offer two categories of evidence: (1) evidence of* any matter the court deems relevant to sentencing, including but not limited to the defendant's prior criminal record, his general reputation, his character, and opinions regarding his character, and (2) evidence of either an extraneous crime or bad act shown beyond a reasonable doubt to have been committed by the defendant *or* for which he could be held criminally responsible, regardless of whether he has been charged or convicted, notwithstanding Criminal Evidence Rules 404 and 405. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07(3)(a) (Vernon 1981 & Supp.1996).

After the Court of Criminal Appeals decided *Grunsfeld v. State,* 843 S.W.2d 521, 524–25 (Tex.Crim.App.1992), disallowing introduction of evidence of unadjudicated acts or offenses, the Legislature responded with amendments to article 37.07(3)(a) that became effective September 1, 1993, allowing the admission of such evidence. *See* TEX. CODE CRIM.PROC.ANN. art. 37.07(3)(a) (1981 & Supp.1996). The aggravated robbery charged against Cox did not happen until November 11, 1994. We are unable to reconcile that article's amended language with Cox's arguments that: (a) an "unadjudicated wrongdoing" not proved beyond a reasonable doubt is inadmissible in punishment, (b) that evidence of Cox's encounter with Rhonda Beck was improperly admitted because the State failed to show a *criminal offense* beyond a reasonable doubt, and (c) the State did not prove a "bad act" by Cox beyond a reasonable doubt. Complying with article 37.07(3)(g), the State gave Cox timely written notice that in the punishment phase, the State intended to offer evidence:

that the defendant, on or about the 21st day of November, 1994, in the County of Collin and the State of Texas committed the following "bad act(s)" in connection with Rhonda Beck

(a) followed Rhonda Beck and entered the apartment complex of Rhonda Beck after she had previously done so,

(b) walked up to Rhonda Beck's apartment and turned the door nob [sic] of same,

(c) possessed a holster for a small handgun,

(d) returned to the apartment complex and retrieved items which resembled a jacket, a handgun, and gloves....

Article 37.07(3)(a) does not define the term "bad acts," but the statute's unambiguous wording makes evidence about them admissible in two situations: (1) where the "bad act" was an offense for which the defendant could be held criminally responsible, and (2) where the act was "bad," but not an offense for which he could be held criminally responsible. *Id.; see Yates v. State,* 917 S.W.2d 915, 921 (Tex.App.—Corpus Christi 1996, pet. filed). In the latter instance, proof of "culpability" in the context of a criminal offense is not necessary.

The jury was entitled to consider and conclude that Cox's conduct, following Rhonda Beck to her apartment, jiggling the doorknob, and frightening her, was a "bad act" within the meaning of article 37.07(3)(a). It is the conduct of following a woman he does not know and jiggling the door knob of her apartment after 1:00 a.m. that makes it bad. That Cox did it was proved beyond a reasonable doubt. Point of error number four is overruled.

### BALANCING TEST

Point of error number five asserts that admitting evidence of the "door knob incident" in the punishment phase of trial violated TEX. R. CRIM. EVID. 403, because the probative value did not outweigh the danger of unfair prejudice to Cox. He made the same objection at trial, but it was overruled. The trial court then granted Cox a running objection on that ground to the testimony of Rhonda Beck and the two Plano police officers in the punishment phase of the trial. *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1991) (op. on reh'g). Having been timely made, that objection imposed on the trial court a duty to perform a balancing test under Rule 403 to determine whether the danger of unfair prejudice to Cox outweighed the probative value of the evidence about the Rhonda Beck incident. *Id.*

When a trial court tests and determines that the balance is a close one, it should favor admission, in keeping with the presumption of admissibility of relevant evidence. *Id.* There is no requirement that the trial judge announce the balancing test on record, but our review of the record and the judge's comments and responses to Cox's attorney compels us to presume that the trial court did perform the mandatory test. *Nolen v. State,* 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994, pet. ref'd).

We conclude that the trial court's ruling on this issue in the punishment phase of Cox's trial is within the zone of reasonable disagreement, and that the ruling was not an abuse of discretion. Our court will not disturb the ruling. *McFarland v. State,* 845 S.W.2d 824, 837–38 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Montgomery,* 810 S.W.2d at 392. The fifth point of error is overruled.

### STOP OR ARREST?

Point of error number six complains that the Plano police did not have reasonable suspicion to stop Cox's vehicle after he left Rhonda Beck's apartment, and that the evidence they seized was the fruit of an illegal stop, erroneously admitted in the punishment phase of the trial. Cox argues that where a stop or seizure is made without a warrant, the State has the burden to demonstrate the propriety of the stop. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). Also, if the stop was illegal, any evidence gained from it must be suppressed. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 1979 & Supp.1996); *Glass v. State,* 681 S.W.2d 599, 600–02 (Tex.Crim.App.1984).

A law enforcement officer is entitled to stop a vehicle containing a person suspected of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968); *Gearing v. State,* 685 S.W.2d 326, 327–28 (Tex.Crim.App. 1985) (op. on reh'g); *Brown v. State,* 830 S.W.2d 171, 175–76 (Tex.App.—Dallas 1992, pet. ref'd). The testimony of Rhonda Beck and the Plano police officers established that she called the police and described Cox's truck to them, that she told them about the

"door knob incident," and that the officers who came in response to Beck's call saw the truck initially parked and unattended by the apartment house, then being driven away from the scene. Based on the totality of the circumstances, the officers had the reasonable suspicion of criminal activity necessary to justify an investigative stop of Cox's truck. *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). The testimony in the record, however, persuades us that the stop was not an arrest. An arrest does not occur until a person who is stopped by officers is actually placed under restraint that restricts his liberty of movement. *Amores v. State*, 816 S.W.2d 407, 411 (Tex. Crim.App.1991). For an arrest to be constitutional, the arresting officers must have probable cause to believe that the person arrested has committed or is committing an offense. *Id.*

■■■ A person's failure to produce a valid driver's license can provide an officer probable cause to arrest him. TEX.TRANSP. CODE ANN. § 521.021 (Vernon Pamph.1996); *Snyder v. State*, 629 S.W.2d 930, 934 (Tex. Crim.App.1982) (relying on predecessor to section 521.021). A new resident of Texas who wishes to drive motor vehicles in this state must obtain a Texas driver's license within thirty days of establishing residence here. *See* TEX.TRANSP.CODE ANN. § 521.029 (Vernon Pamph.1996). Contemporaneously with and incident to the valid arrest of a vehicle driver, the arresting officer may conduct a search of the vehicle's passenger compartment and seize evidence that is in plain view. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 769 (1981); *Gaines v. State*, 888 S.W.2d 504, 510 (Tex.App.—El Paso 1994, no pet.).

■■■ Here, according to the testimony, Cox was not arrested until after the officers stopped him and talked to him. Cox gave the officers evasive answers but did disclose a telephone number of the place he was staying. Officer Baumert called the number and the person who answered the telephone said Cox had lived there for a month and a half. After that, the officers arrested Cox for refusing to identify himself and for not having a valid Texas driver's license. After

arresting Cox, Officer Baumert searched Cox's truck and found surgical latex gloves, condoms, a blue jacket, an empty handgun holster, and an empty knife sheath. No search was made before the arrest, and the items found in the search were a subject of the testimony in the punishment phase of the trial.

■■ Before that testimony, Cox filed a written motion to suppress that evidence on grounds that:

> All statements, either written or oral, made after the said seizure of defendant are fruits of the illegal arrest and search and are therefore inadmissible as fruits of the poisonous tree.

In its brief on appeal, the State argues that because the motion to suppress only complained about the arrest and search (not the stop), the only issue before the trial court in the suppression hearing was whether the arrest was supported by probable cause. We agree.

■■ It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990); *Smith v. State*, 721 S.W.2d 844, 855 (Tex.Crim.App.1986). By failing to object at trial about the initial police stop of Cox's truck, he has waived that complaint for appeal. *Pyles v. State*, 755 S.W.2d 98, 116 (Tex.Crim.App.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Wade v. State*, 814 S.W.2d 763, 767 (Tex.App.— Waco 1991, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex.App.—San Antonio 1990, no pet.).

We conclude that because the arrest was lawful, the search of Cox's truck by the police officers was lawful, and the items of evidence they found in the truck were not the fruit of a poisonous tree. That evidence was admissible in the punishment phase of Cox's trial. The trial court did not err in denying Cox's motion to suppress because it only complained about the arrest and search, for which the officers did have probable cause.

The sixth point of error is overruled and the judgment of the trial court is affirmed.