No. 04-97-00787-CR



Hector Jauariz LEBRON,


Appellant



v.



The STATE of Texas,


Appellee



From the 144th Judicial District Court, Bexar County, Texas 


Trial Court No. 96-CR-3164


Honorable Susan D. Reed, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Tom Rickhoff, Justice

 Sarah B. Duncan, Justice 

 Karen Angelini, Justice


Delivered and Filed: February 10, 1999


AFFIRMED


Nature of the case

 A jury found Hector Jauariz Lebron guilty of the offense of murder. The jury assessed
punishment at confinement for life in the Institutional Division of the Texas Department of Criminal
Justice. In his first issue, Lebron alleges that the evidence is factually insufficient to support the
jury's finding that he did not act in self-defense. In his second issue, Lebron contends that the State
improperly impeached a witness with a prior inconsistent statement without laying the proper
predicate. In his third issue, Lebron argues that the State improperly commented on his failure to
testify during closing argument in the punishment phase of the case. In his fourth issue, Lebron
asserts that the court abused its discretion in admitting unadjudicated extraneous bad acts during the
punishment phase. In his fifth issue, Lebron contends that the court erred in admitting gruesome
color photographs of the victim. We affirm.

Factual Background

 Lebron was indicted and convicted for the murder of his wife, Sarah. According to the
testimony, Sarah had moved to an apartment while the couple was undergoing a divorce. However,
Sarah and Lebron had been attending marriage counseling and were attempting to reconcile. On
April 8, 1996, the couple rode home together from work and went to Lebron's house. They went
inside the house and began arguing when Lebron confronted Sarah about her extramarital affairs.
Lebron did not testify at trial, but related the circumstances surrounding Sarah's death to his
marriage counselor, Dr. Schroeder and his friend, Jonte Murrey. According to the evidence, Lebron
went inside the walk-in pantry in the kitchen to get some food and when he came out Sarah had a
knife. Murrey testified that Lebron told him that Sarah was holding the knife in a threatening
position while Dr. Schroeder testified that Lebron told her that Sarah came at Lebron with the knife.
Lebron struggled with Sarah for the knife and she was stabbed. The doctor who performed the
autopsy testified that Sarah received 24 stab wounds.

 After the struggle was over, Lebron put the knife in the sink, took a shower, and changed his
clothes. He drove Sarah's car to the airport and rented a car. According to the evidence, he drove
to Corpus Christi to commit suicide by jumping off the bridge. However, Lebron did not commit
suicide. Instead, he drove back to San Antonio and went to a friend's apartment. When neither
Lebron nor Sarah reported for work the next day, co-employees called the police. A police officer
entered Lebron's house but did not find Sarah's body which was lying in the pantry. Lebron
confided to the couple's marriage counselor, Dr. Schroeder, that he had killed Sarah. However, Dr.
Schroeder knew that the police had been to the house and had not found a body. Dr. Schroeder
suggested that Lebron talk to a lawyer. Lebron then contacted a lawyer who went to Lebron's house,
found Sarah's body, and called the police. Lebron spent some nights in a hotel where he told his
friend, Jonte Murrey, about how the offense occurred. Lebron was arrested several weeks later for
Sarah's murder.

Self-defense

 In his first issue, Lebron alleges that the evidence was factually insufficient to support the

 jury's finding that he did not act in self-defense. When presented with a factual insufficiency claim,
we view all the evidence without the prism of "in the light most favorable to the verdict," and reverse
"only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust." Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In making this
determination, we review all the evidence in the record which is probative of self-defense to decide
if the finding of guilt and the implied finding against self-defense are so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Reaves v. State, 970
S.W.2d 111, 116 (Tex. App.--Dallas 1998, no pet.) (combining standards set out in Clewis and
Saxton v. State to review the factual sufficiency of a self-defense issue). We give appropriate
deference to the jury's decision and do not substitute our judgment for theirs. Clewis, 922 S.W.2d
at 135. We do not reverse a jury's decision simply because we disagree with the result, and we may
find the evidence factually insufficient only where necessary to prevent manifest injustice. Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).

 The jury was instructed that if they found that Lebron acted in self-defense or they had a
reasonable doubt on the issue, they must acquit. Because the jury found Lebron guilty, there was
an implied finding that he did not act in self-defense. A person is justified in using deadly force
when: (1) self-defense is justified under section 9.31; (2) a reasonable person in the defendant's
situation would not have retreated; and (3) the use of deadly force was reasonably believed to be
immediately necessary to protect the defendant against another's use or attempted use of unlawful
deadly force. Tex. Pen. Code Ann. § 9.32(a) (Vernon Supp. 1998).(1) The State has the burden of
persuasion to disprove self-defense but not a burden of production which means that the State must
prove its case beyond a reasonable doubt. See Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim.
App. 1991). Because the issue of self-defense is an issue of fact for the jury to decide, the credibility
of the self-defense evidence is solely within the jury's province and the jury is free to accept or reject
the evidence. Id. at 914.

 Lebron contends that the testimonial evidence concerning self-defense is more persuasive
than the State's theory of cold blooded murder. Lebron points to the testimony of Dr. Schroeder and
Jonte Murrey which recounted Lebron's version of the events as support for self-defense. Dr.
Schroeder testified that Lebron told her that he had killed Sarah. According to Dr. Schroeder, Sarah
came at Lebron with a butcher knife. They fought for the knife and fell to the floor in the struggle.
While on the floor, Sarah was stabbed "a few times." Lebron told Murrey that they had an argument
and when he came out of the pantry, Sarah had a knife in a threatening position. According to
Murrey, Lebron said that he was able to take the knife away from Sarah, but she continued to
struggle with him and she was stabbed a "small number of times." During the struggle, Sarah
grabbed a paint can and hit Lebron on the leg and was saying very bad things to him. Lebron
contends that the confessions are consistent and corroborate each other.

 The autopsy revealed that Sarah had 24 stab wounds and numerous incised wounds. The
medical examiner testified that Sarah's throat had been slit which was a lethal injury. Sarah also had
a large gaping wound on the palm of her hand which the medical examiner characterized as a
defensive wound. On cross-examination, the medical examiner testified that the wound could also
have occurred if Sarah grabbed the knife blade and Lebron grabbed the handle during a struggle.
Murrey testified that he observed a bruise on Lebron's leg. Dr. Schroeder testified that she saw some
minor cuts and scratches on Lebron's arms and body. Lebron's blood stained shirt was found at the
scene but was not torn.

 The jury had to determine whether Lebron reasonably believed that deadly force was
immediately necessary to protect against Sarah's use of deadly force and that a reasonable person
would not have retreated. The State argues that there is no evidence that Lebron even attempted to
retreat. Further, even if Sarah came at Lebron with a knife, once Lebron gained control of the knife,
the jury could have found that deadly force was no longer immediately necessary. The evidence
showing that Leborn had a few minor scratches and cuts supports the theory that Sarah did not have
control of the knife. The jury could also consider the medical evidence concerning the number of
stab wounds. Lebron argues that the number of stab wounds is only one piece of evidence and does
not negate self defense. However, the jury was free to consider and weigh the medical testimony.


 Viewing all of the evidence probative of self-defense, the jury's rejection of the self-defense
claim was not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust." Clewis, 922 S.W.2d at 134. We find the evidence factually sufficient to establish beyond
a reasonable doubt that Lebron did not stab Sarah in self-defense. We overrule Lebron's first issue.

Impeachment

 In his second issue, Lebron contends that the State improperly impeached a defense witness
with prior inconsistent statements without laying the proper predicate under Rule 612 of the Rules
of Criminal Evidence. On cross-examination, the State questioned Dr. Schroeder about her grand
jury testimony. Lebron points to three areas of improper impeachment due to the failure to lay the
proper predicate. However, defense counsel failed to make any timely objections to the State's
questions in the three instances complained of on appeal. Defense counsel objected at one point on
the basis that the correct procedure was to show the witness the statement and the court agreed but
the objection was not on an area complained of on appeal. The State then followed that procedure
on the next question. However, Lebron failed to object on the basis of predicate when the State
offered another statement that Lebron complains of on appeal. Further, the other two alleged areas
of improper impeachment occurred before defense counsel made any objection about the proper
procedure. Thus, Lebron has not preserved error and presents nothing for appellate review. Tex.
R. App. P. 33.1(a). We overrule Lebron's second issue.

Jury argument

 In his third issue, Lebron contends that the State improperly commented on his failure to

testify during the punishment phase of trial. Lebron points to the following portion of the State's
argument as improper:

 The Defense suggests he has proved to you -- he has
proved to you sudden passion arising from an
adequate cause. You know what? There's really no
evidence of that, none whatsoever. The Defense as
much as conceded it in his argument because what he
told you is, maybe the Defendant was in terror, maybe
the Defendant was in a rage. There's no evidence of
it. No one got on that witness stand and told you that.
Dr. Schroeder didn't. She didn't testify to what was
going on in the Defendant's mind. Mel Murrey
didn't. He didn't testify to what was going on in the
Defendant's mind.


Lebron acknowledges that no objection was made at trial to the argument but contends that the
argument was fundamental error because it violated article 1, section 10 of the Texas Constitution
and article 38.08 of the Code of Criminal Procedure. The State argues that Lebron has failed to
preserve error on this issue. We agree. The Court of Criminal Appeals has held that a defendant's
failure to object to a jury argument forfeits his right to complain about it on appeal. Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), cert. denied, 117 S. Ct. 1442 (1997). Further, an
exception to the requirement of a contemporaneous objection, that the argument was so prejudicial
that an instruction to disregard would not cure the harm, no longer exists. Valencia v. State, 946
S.W.2d 81, 82 (Tex. Crim. App. 1997). Following the holding in the Cockrell case, courts have held
that a defendant must object to an argument that constitutes an improper comment on the defendant's
failure to testify in order to preserve the issue for appeal. See Calderon v. State, 950 S.W.2d 121,
138-39 (Tex. App.--El Paso 1997, no pet.); Garner v. State, 939 S.W.2d 802, 807 (Tex. App.--Fort
Worth 1997 pet. ref'd). Therefore, Lebron has waived his complaint that the State's argument
improperly commented on his failure to testify.

 Even if Lebron had not waived the issue, we do not believe that the State's argument
commented on Lebron's failure to testify. Permissible jury argument must fall into the following
categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer
to the argument of opposing counsel; and (4) a plea for law enforcement. Borjan v. State, 787
S.W.2d 53, 55 (Tex. Crim. App. 1990). Any argument made outside of these areas will not
constitute reversal unless the argument is manifestly improper, violates a mandatory statute, or
injects new and harmful facts into the trial proceedings. Id. Further, the alleged comment on the
defendant's failure to testify must be either manifestly intended, or of such a character that a jury
would necessarily take it as a comment on the defendant's failure to testify. See Short v. State, 671
S.W.2d 888, 890 (Tex. Crim. App. 1984). In this case, the State argued that no one testified that the
defendant was enraged and specifically commented that Dr. Schroeder and Murrey did not testify
to that effect. The argument was merely summarizing the evidence and the lack of evidence and was
not a comment on Lebron's failure to testify but rather a comment on the failure of Schroeder and
Murrey to testify about the defendant's state of mind. We overrule Lebron's third issue.

"Bad act"

 In his fourth issue, Lebron argues that the court abused its discretion in admitting "bad act"
evidence during the punishment phase of trial. Evidence may be offered as to any matter the court
deems relevant to sentencing, including any evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt to have been committed by the defendant. Tex. Code Crim. Proc. ann
art. 37.07 § 3(a) (Vernon Supp. 1998).

 The State called Auralili Troyano, Lebron's neighbor, to testify during the punishment phase.
Troyano testified that she and her husband had met Lebron at the neighborhood pool. One night,
Lebron and her husband went to a bar to play pool while Troyano stayed home with her two young
children. Approximately twenty minutes after the men left, Lebron entered her house without
ringing the doorbell or knocking. Troyano asked where her husband was and Lebron said that he
had stayed at the bar. Troyano testified that she was frightened because she knew her husband would
not have stayed behind at the bar. The phone rang and it was Troyano's husband who was upset and
asked her if Lebron was there and when Troyano said that he was, he told her to tell him to leave.
Troyano told Lebron to leave and he did. Her husband took a taxi home and they reported the
incident to the police.

 Lebron contends that this incident does not constitute a "bad act" and any probative value
was greatly outweighed by the prejudicial effect under Rule 403. Lebron argues that the testimony
was prejudicial because of the similarity to the circumstances of the offense of burglary of a
habitation with the intent to commit sexual assault for which he was serving deferred adjudication.
The victim of that offense, a seventeen year-old neighbor, testified that Lebron rang the doorbell and
said that he needed to use the phone. The girl allowed Lebron inside. After he used the phone,
Lebron pulled a gun on her and told her to take off her clothes. He then came toward her and
grabbed her shirt and she screamed. The girl was able to escape and run to a neighbor's house to call
the police.

 While article 37.07 does not define "bad act," the act does not have to be an offense for
which the defendant could be held criminally responsible. See Cox v. State, 931 S.W.2d 349, 357
(Tex. App.--Fort Worth 1996), pet. dism'd, improvidently granted, 951 S.W.2d 5 (Tex. Crim. App.
1997). In the Cox case, the court of appeals found that a jury could have concluded that the
defendant's action of following a woman home, jiggling her door, and frightening her was a "bad
act." Id. In this case, the jury could have also reasonably concluded that Lebron's actions
constituted a "bad act." Article 37.07 allows the admission of bad acts during the punishment phase
of trial. Thus, the State contends that article 37.07 makes bad acts relevant and also more probative
than prejudicial as a matter of policy. Further, the court's ruling admitting evidence will only be
reversed upon a finding of an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990). No abuse of discretion is shown if the ruling is within the zone of reasonable
disagreement. Id. 

 In this case, the court did not abuse its discretion in determining that Lebron's conduct
constituted a "bad act" and that the probative value was not outweighed by the danger of unfair
prejudice. Thus, the court did not err in admitting this evidence during the punishment phase of trial.
We overrule Lebron's fourth issue.

Photographs

 In his fifth issue, Lebron argues that the court abused its discretion in admitting gruesome
color photographs of the deceased. Lebron contends that the probative value of the autopsy
photographs were substantially outweighed by the danger of unfair prejudice under Rule 403. We
review a trial court's decision to admit evidence under an abuse of discretion standard. Id. In
determining whether the probative value of the photographs is outweighed by its inflammatory
nature, we consider factors such as: the number of exhibits offered, their gruesomeness, detail, size,
and color, whether they are close-up, whether the body is naked or clothed, the availability of other
means of proof, and the unique circumstances of the individual case. See Santellan v. State, 939
S.W.2d 155, 172 (Tex. Crim. App. 1997). Further, autopsy photographs are admissible unless they
depict mutilation of the victim caused by the autopsy itself. Id. Autopsy photographs may add to
the jury's understanding of the nature of the wounds. Matamoros v. State, 901 S.W.2d 470, 476
(Tex. Crim. App. 1995).

 In this case, the State attempted to admit the autopsy photographs during the medical
examiner's testimony but the court sustained Lebron's Rule 403 objection. The medical examiner
testified about the nature of the stab wounds found on Sarah's body. On cross-examination, defense
counsel questioned the medical examiner about the nature of the wound on Sarah's left hand and
whether it was a defensive wound or caused by Sarah grabbing the knife. On re-direct, the State
questioned the medical examiner about the severity of the palm wound and asked the medical
examiner if a picture would be helpful in her explanation. The medical examiner stated that it would
be helpful and the photograph was admitted over Lebron's Rule 403 objection. The remaining nine
autopsy photographs were admitted during the State's rebuttal without any additional testimony.
Defense counsel re-urged his Rule 403 objection.

 The photographs were admissible because the testimony of the medical examiner concerning
the wounds was admissible. See Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997)
(holding that a photograph is admissible if verbal testimony as to matter depicted in the photograph
is also admissible). The autopsy photographs revealed the numerous stab wounds inflicted upon
Sarah's body. The photographs are in color and are fairly close-up views of the wounds to her face,
neck, upper body, and hands. The photographs revealing the deep slit across her throat and a deep
cut on her left palm are somewhat gruesome but they are no more gruesome than the facts of the
offense itself. See id. at 196. Further, the photographs could add to the jury's understanding of the
nature of the wounds. Because the photographs depict the wounds inflicted upon the victim and
were the subject of testimony at trial, their probative value was not substantially outweighed by their
possible prejudicial effect. We cannot say that the court abused its discretion in allowing the
photographs to be introduced into evidence. We overrule Lebron's fifth issue.

 We affirm the judgment.

 Karen Angelini, Justice

DO NOT PUBLISH








1. Section 9.31 states that a person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of
lawful force. Tex. Pen. Code Ann. § 9.31(a) (Vernon 1994).
Return to
Fourth Court of Appeals