In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00161-CR


______________________________




GUNNAR ERIC AUSTIN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 07F0244-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Gunnar Eric Austin (1) has appealed from his conviction by a jury for the offense of evading
arrest with a vehicle. (2) See Tex. Penal Code Ann. § 38.04 (Vernon 2003). The jury found the
enhancement paragraphs "true" and assessed Austin's punishment at two years' confinement. (3) 

 The arresting officer, Joseph Lindsey, of the New Boston Police Department, testified that
he had been called by Austin's girlfriend and the mother of his child, Nicole Mincher, earlier in the
day because Austin had jumped over the counter in the convenience store at which she worked and
pushed her into the safe. Austin left before Lindsey arrived, and Mincher asked Lindsey "if [he]
would please try to locate [Austin] to make sure that the child was okay, . . . . " Later that evening,
Mincher telephoned the police department and told them she saw Austin in her vehicle at the gas
station across the street. When Lindsey arrived, Austin left the station. Lindsey followed and turned
on his overhead lights as soon as they reached Highway 8. Lindsey testified that Austin sped up to
sixty miles per hour in a forty-five-mile-per-hour zone and passed a vehicle in front of him. Austin
continued to accelerate, eventually reaching a speed of eighty-nine miles per hour in a seventy-mile-per-hour zone. At that point, Lindsey turned on his siren. Lindsey stated Austin traveled
approximately 2.8 miles down Highway 8, driving erratically and nearly losing control of the vehicle,
then made a sudden turn onto a county road, sliding sideways, with the car coming up on two wheels
and then landing. 

 Austin testified in his own behalf, stating that he and his girlfriend had just purchased the car
a couple of days before and that it had an oil leak. He testified that he was attempting to turn the air
conditioning on and off and accelerate in order to try to determine where the leak was located. He
further testified that, because the car was unfamiliar to him, he was driving erratically because he
was accidentally turning on the windshield wipers and trying to figure out the controls for various
features on the car. He testified that he did not see the officer behind him and that, when he saw the
officer and realized the officer was trying to stop him, he turned onto a county road and stopped.

 On appeal, counsel contends that the trial court abused its discretion by placing Austin in leg
restraints for the trial without proof of justification, or need. We agree.

 Our review is based on the following sequence of events. Austin filed a pretrial motion to
appear in personal clothes and without restraints. At pretrial, the following occurred:

PROCEEDINGS


(Open court; Defendant present, no jury.)



 THE COURT: . . . . There have been a number of motions filed by the
Defense that the Court is going to take up at this time. I think the first one I've got
that comes out on the stack is the Motion for the Defendant to Appear in Personal
Clothes and Without Restraints. Any objections from the State as it relates to the
clothes?


 [The State]: No, sir.


 THE COURT: . . . . That'll be granted. Now, as far as restraints go, does he
have his leg - the little -?


 [Deputy Foster]: No, sir, not this morning. I left it in another van. I had to
swap vehicles real quick and I forgot it.


 THE COURT: Okay.


 [Deputy Foster]: But he will have it when the jury's here.


 THE COURT: Yeah. We'll just have the leg brace that goes under his pants. 
Nobody can see it. That way there's not any obvious use. But otherwise, there will
be no visible restraints for the jury to view. So the Court grants that with the
understanding that that's what that'll be.


 We addressed this constitutional protection in detail in Ziolkowski v. State, 223 S.W.3d 640
(Tex. App.--Texarkana 2007, pet. ref'd). In that opinion, decided April 3, 2007, we reiterated the
guiding precepts and rules governing the shackling of prisoners when they are brought to court and
found error, but concluded that it was harmless. 

 The underlying basis for the procedural requirements is the recognition that, when a
defendant is viewed by the jury in handcuffs or shackles, his or her presumption of innocence is
seriously infringed. Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Only in rare
circumstances is shackling called for, and in such event, the record must detail the grounds for such
action. Id.; Ziolkowski, 223 S.W.3d at 642-43; Marquez v. State, 725 S.W.2d 217, 229 (Tex. Crim.
App. 1987). The trial court must set forth with specificity the reasons supporting its decision to
restrain the defendant. Cooks v. State, 844 S.W.2d 697, 722 (Tex. Crim. App.1992) (citing Long,
823 S.W.2d at 282; Marquez, 725 S.W.2d at 228). On appeal, the role of an appellate court is to
determine whether the trial court abused its discretion in authorizing the restraint. Long, 823 S.W.2d
at 282. 

 In this case, tried five months after our opinion in Ziolkowski, the trial court once again
ordered a defendant shackled in front of a jury panel and during a trial with no indication of any
reason or need for such. Further, from this record, there is no indication or implication that we could
reasonably draw to indicate that shackling was necessary. In this case, it is apparent that Austin was
in what they described as a "leg brace" that went under his pants, and the judge's comments were not
focused on whether shackling was necessary or appropriate--but instead focused solely on his
perception that "[n]obody can see it. That way there's not any obvious use."

 Whether there was any obvious use, or whether the "leg brace" was visible are not the correct
questions. As we explained in Ziolkowski, a defendant may be shackled before a jury only in such
"rare exceptions" as circumstances where 

 in the sound discretion of the [trial] court, it appears necessary to retain [the
accused's] shackles to prevent the escape or self-destruction of the prisoner, or to
prevent him from injuring bystanders or officers of the court, or if necessary to
maintain a quiet and peaceable trial, the court may try the prisoner without having the
shackles removed; his action being subject to the closest scrutiny and review by the
appellate court.


 Ziolkowski, 223 S.W.3d at 643. "We desire to make it perfectly plain that we regard a trial with the
prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when
the record brings the case clearly within one of the rare exceptions that we would consent for a
conviction to stand." Gray v. State, 99 Tex. Crim. 305, 268 S.W. 941, 950 (1924) (op. on reh'g). 

 Again, as we stated in Ziolkowski, the type of defendant for which shackles are justifiable are
as described by the Texas Court of Criminal Appeals. See Marquez, 725 S.W.2d at 228-30. In that
case, the defendant had previously been convicted of capital murder, had carried deadly weapons in
prison, choked and stabbed fellow inmates, attacked and spit on cameramen, and threatened to run
and cause police officers to have to shoot and kill him. The court concluded that the trial court had
not abused its discretion when it ordered the defendant shackled during the punishment phase of
trial. Likewise, where a defendant had a history of escapes and had expressed his wish to die rather
than face imprisonment, the Texas Court of Criminal Appeals found the trial court had not abused
its discretion in ordering the defendant to wear leg restraints in trial. Jacobs v. State, 787 S.W.2d
397, 407 (Tex. Crim. App. 1990). 

 Further, when a trial court fails to make specific findings on the need for restraints, that court
abuses its discretion. Simms v. State, 127 S.W.3d 924, 928 (Tex. App.--Corpus Christi 2004, pet.
ref'd); Cox v. State, 931 S.W.2d 349, 352 (Tex. App.--Fort Worth 1996), pet. dism'd, improvidently
granted, 951 S.W.2d 5 (Tex. Crim. App. 1997). 

 Thus, in this case, the trial court abused its discretion by shackling Austin without facts
shown by the record to justify such an action, and also in failing to make the required specific,
factually supported findings that would allow shackling. 

 In a typical appeal, and as we did in Ziolkowski, we recognize that, even if an abuse of
discretion exists, reversal may not be called for if the abuse was harmless. Canales v. State, 98
S.W.3d 690, 697-98 (Tex. Crim. App. 2003); Cooks, 844 S.W.2d at 723; Long, 823 S.W.2d at 283. 
In Canales, Cooks, and Long, the Texas Court of Criminal Appeals held that, where the record did
not affirmatively show that the jury had seen the defendant's ankle shackles, the appellant could not
demonstrate harm. In Long, the court found that the trial court's order that the defendant be shackled
did not have adequate support in the record and found that the trial court's decision was thus an abuse
of discretion. Long, 823 S.W.2d at 283. However, as in Canales, any error was harmless error.

 The trial court abused its discretion by shackling Austin. This error is a constitutional one
as it pertains to the defendant's presumption of innocence. Hence, we must reverse unless we
determine beyond a reasonable doubt that the error did not contribute to Austin's conviction. See
Tex. R. App. P. 44.2(a).

 The three ways appellate courts have identified harm to a defendant who is restrained during
trial are: (1) prejudice felt by jurors who conclude that, because a defendant is shackled, the court
has already decided that he or she is guilty, dangerous, and untrustworthy; (2) a restraint may
interfere with the defendant's mental faculties and ability to communicate with counsel during trial;
and (3) restraints are an affront to a court and its proceedings. Cox, 931 S.W.2d at 353.

 There is no evidence jurors ever saw Austin's shackles, and thus no evidence the jury took
the shackles to be a comment by the trial court on Austin's guilt, danger, or trustworthiness. Nor is
there any evidence or argument Austin was hampered in his ability to communicate with his trial
attorney. The trial court noted that the leg brace would be under Austin's pants and "[n]obody can
see it." In the complete absence of any immediate indication to the contrary, this suggests that the
shackling would not be considered as an offense to the dignity and decorum of the courtroom
proceedings. We conclude, beyond a reasonable doubt, that Austin did not suffer harm. (4) We 
conclude, beyond a reasonable doubt, based on the record before us, that the restraints did not
contribute to Austin's conviction.

 We affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: November 4, 2008

Date Decided: November 18, 2008


Do Not Publish




 
1. Austin's first name as listed on the judgment is "Gunner." However, he testified at trial that
the correct spelling of his first name is "Gunnar." 
2. Austin has a companion appeal before this Court in cause number 06-07-00162-CR for the
offense of endangerment of a child.
3. Initially, counsel filed an Anders brief in this case. Anders v. California, 386 U.S. 738
(1967). Upon review, we identified an arguable ground of error and abated for appointment of new
counsel to address that issue and any others that might be appropriate on appeal. The case has been
rebriefed, and we will now address the appeal on its merits.
4. We again point out to the trial bench that this is a risky practice and is not to be used
routinely. If there is any indication that a juror saw the restraints, it is highly likely the juror would
believe the defendant was dangerous and guilty, which would require a reversal of the conviction,
unless the situation involved the "rare" case where a necessity for restraint existed and the trial court
specified such reasons in the record.