

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00066-CR

_____

ZACKARY YOUNG, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 2
Denton County, Texas
Trial Court No. CR-2017-04516-B

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In one issue, appellant Zackary Greg Young appeals the denial of his motion to suppress. Young argues that the officer who detained him lacked reasonable suspicion to conduct a traffic stop. We affirm.

Around 11:00 p.m. on January 16, 2017, an Uber driver named Nicolette Lopez placed a 911 call. She reported that she was "pretty sure" she was being followed; a black or dark maroon sedan with a broken headlight had been shadowing her for the last twenty minutes, even as she changed directions. Lopez said she had "no idea" why the other car was following her. She gave a description of her own vehicle, and she described her location and direction to the 911 operator as she drove through Denton.

Officer Kevin Vice intercepted the maroon sedan as it passed by. As Officer Vice pulled behind the sedan, the driver changed lanes. Officer Vice conducted a traffic stop. Lopez stopped at the parking lot of a nearby business.

Officer Vice found Young in the driver's seat of the maroon sedan. Young's appearance and demeanor led Officer Vice to suspect that he was intoxicated. Officer Vice asked Young to perform field sobriety tests, but Young refused. Officer Vice arrested Young on suspicion of driving while intoxicated (DWI). He subsequently obtained a warrant for a blood draw.

Young was charged with DWI, which is a class A misdemeanor when the driver has a blood alcohol concentration of .15 or more. *See* Tex. Penal Code Ann. § 49.04(d). Young filed a motion to suppress the results of his blood draw. He argued that Officer

Vice lacked reasonable suspicion to conduct the initial traffic stop, and any resulting evidence was tainted by this illegality.

At the suppression hearing, the trial court reviewed Lopez's 911 call and heard testimony from Officer Vice. According to Officer Vice, Lopez seemed nervous or scared when she called to report a "suspicious person" following her. Officer Vice testified that it was highly unusual for a stranger to be following a woman for twenty minutes at 11:00 p.m. Upon receiving the call, he was immediately concerned that a domestic violence or stalking situation was brewing, or perhaps a carjacking or assault. So, when he saw the maroon sedan with the broken headlight following Lopez—just as she had described—he decided to conduct a traffic stop, believing that the circumstances gave him reasonable suspicion to do so.

After hearing the evidence, the trial court denied the motion to suppress and entered findings of fact and conclusions of law. Young pleaded nolo contendere to class B misdemeanor DWI pursuant to a plea agreement and received fifteen months' probation. Young appeals the denial of his motion to suppress. *See* Tex. R. App. P. 25.2(a)(2)(A).

To begin, Young challenges the trial court's findings, arguing that some of them lack record support. For the most part, the challenged findings are well supported by the record; we will elide the few unsupported portions:

1. The 911 audio call and Officer Kevin Vice's body cam video were admitted by Denton County Assistant District Attorney, Jordan

3

Bredefeld, and defense counsel, Nathan Miller, before this Court at a hearing on Defendant's Motion to Suppress on January 22, 2019.

2. In the call to 911, the caller, Nicolette Lopez, stated a driver, the defendant, was following her for twenty minutes.

3. Ms. Lopez identified the location of the call while she was driving, which was 2401 Robin Wood Lane.

4. She also stated that the defendant was driving a dark maroon or black car.

5. Ms. Lopez stated that Defendant's vehicle had a busted headlight.

6. Ms. Lopez told the call taker she had been driving for the last hour and a half and was being followed for the last 20 minutes.

7. Rick Shauer, the Denton County call taker, relayed that information to the officers . . . .

8. Officer Kevin Vice testified before this Court at a hearing on Defendant's Motion to Suppress on January 22, 2019. The Court finds his testimony to be credible in all respects.

9. Officer Kevin Vice is a certified peace officer with the State of Texas and is employed with the Denton Police Department.

10. Officer Vice testified that on January 22, 2019 that he was performing his duties with Denton Police Department.

11. Officer Vice testified that he received information regarding the suspect through the 911 call dispatcher, Mr. Shauer.

12. Officer Vice testified he received information via his call notes that the defendant was following the 911 caller for 20 minutes.

13. Officer Vice testified he was concerned that the defendant may commit a crime against the 911 caller; furthermore, Officer Vice has encountered situations where there have been carjacking, assault, and stalking incidents.

14. Officer Vice testified he felt it was his duty to investigate because he was concerned that the defendant had been or was about to be engaged in criminal activity.

4

15. Officer Vice also testified that the defendant changed his driving behavior when he pulled up behind the defendant's vehicle.

16. Officer Vice stated the defendant's front headlamp was not fully lit, which . . . matched the caller's description of the suspicious vehicle having a "busted" headlamp.

Ultimately, the trial court concluded that Young's suspicious behavior, as described in the 911 call and corroborated by Officer Vice's observations, formed a sufficient basis for reasonable suspicion to make the initial stop. The trial court further concluded that the dim headlamp was a potential violation of the transportation code, adding to the officer's reasonable suspicion. *See* Tex. Transp. Code Ann. § 547.302(a).

In his sole issue, Young challenges these conclusions, arguing that neither his alleged behavior nor the dim headlamp provided Officer Vice with reasonable suspicion to detain him. As to his behavior, he argues that Officer Vice acted upon unsupported assumptions and that there was no evidence to show that any offense was actually in progress. He notes that Officer Vice connected his actions with several potential offenses, such as ongoing stalking or impending assault, but he argues that this is not enough. Rather, according to Young, the State was required to "establish" the elements of a then-occurring offense before reasonable suspicion would arise. As to the headlamp, he argues that the evidence shows it was illuminated, at least to some degree, and it therefore cannot form a basis for reasonable suspicion.

We need not address Young's argument concerning the headlamp, for as we explain, his questionable behavior was enough to provide reasonable suspicion.

5

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

At the outset, we find it important to note two things. First, we do not believe that Lopez's reliability can be doubted. The determination of reasonable suspicion is dependent upon both the content of the information known to the officer and its degree of reliability. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Information provided to police from a citizen-informant who identifies herself and may be held to account for the accuracy and veracity of her report may be regarded as reliable. *Derichsweiler*, 348 S.W.3d at 914–15. And even were there reason to doubt her motives, an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand" may give reliable heft to the informant's tip. *See Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330 (1983). Lopez identified herself, described her own vehicle, and gave a detailed account of events as they unfolded. Her descriptions of Young's location, vehicle, and actions were soon corroborated by the officer who intercepted him, and she waited for the officers in a nearby parking lot. Lopez's report was free from contradiction or any suggestion of improper motive. The trial court was free to assign great weight to her 911 call, as it evidently did when it included the substance of her call in its findings.

Second, we disagree with Young's assertion that the State was required to prove the elements of a particular offense in order to demonstrate reasonable suspicion for a simple traffic stop. This argument was specifically rejected in *Derichsweiler*, which held that the facts need not "show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." 348 S.W.3d

7

at 916. "Unlike the case with probable cause to justify an arrest, it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction." *Id.* Rather, it is enough if the articulable facts show that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime. *Id.*

Here, while perhaps not overtly criminal, the circumstances of this case—a man following a woman he did not know across town, late at night, for twenty minutes, only to break pursuit when police approached—certainly suggest that "*something* of an apparently criminal nature is brewing." *See id.* at 917. Many Texas courts have held that a similar assembly of facts gives rise to reasonable suspicion. In *Gutierrez v. State*, another DWI case, the court determined there was reasonable suspicion because "[a]lthough the red SUV had violated no traffic laws, Officer Hancock believed it was unusual for a male to follow a female whom he did not know, for nearly a half-an-hour, across town, at 3:00 a.m." No. 07-12-00020-CR, 2013 WL 2107183, at *1, *5 (Tex. App.—Amarillo May 13, 2013, no pet.) (mem. op., not designated for publication). The court reached the same conclusion in *Virgoe v. State*, also a DWI prosecution, where the defendant followed a man closely for a prolonged period, at times tailgated him as he turned through a neighborhood, and then pulled up next to the man as he arrived at his house. No. 05-02-01040-CR, 2003 WL 21142777, at *1, *3 (Tex. App.—Dallas May 19, 2003, pet. ref'd) (not designated for publication). In *Rocha v. State*, still another DWI prosecution, it was held that there was reasonable suspicion where late at night, a crying

8

woman pointed out to police the white van that "had been following her for several minutes, driving closely behind her, and pulled up beside her at stop signs where the occupants of the car yelled out the window at her." No. 07-02-00055-CR, 2003 WL 194728, at *1–2 (Tex. App.—Amarillo Jan. 29, 2003, no pet.) (mem. op., not designated for publication). In *Terrell v. State*, the court upheld a traffic stop that led to a DWI conviction in part because the defendant tailed a man for an extended period, going so far as to park behind him for ten minutes and then resume following him when he drove off. 473 S.W.3d 420, 421, 424 (Tex. App.—Houston [14th Dist.] 2015, no pet.). And in *Cox v. State*, we held there was reasonable suspicion for a traffic stop because a man followed a woman home at 1:00 a.m. and tested her doorknob. 931 S.W.2d 349, 356, 358 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997).

True to this precedent, and considering the totality of the circumstances, we hold there was reasonable suspicion to conduct a traffic stop. *See Ford*, 158 S.W.3d at 492. The specific, articulable facts that are subsumed within the trial court's findings would have justified Officer Vice in the conclusion that Young was or soon would be engaged in criminal activity on the night of January 16, 2017. *See id.* We therefore overrule Young's sole issue.

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 26, 2019