ACCEPTED
03-14-00527-CR
5490132
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/1/2015 1:11:05 PM
JEFFREY D. KYLE
CLERK

## NO.  03-14-00527-CR

## IN THE COURT OF APPEALS
## FOR THE
## THIRD SUPREME JUDICIAL DISTRICT OF TEXAS
## AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/1/2015 1:11:05 PM
JEFFREY D. KYLE
Clerk

## NO. 14-0874-K368

## IN THE 368th DISTRICT COURT
## OF WILLIAMSON COUNTY, TEXAS

### JAMES ALAN WEATHERFORD,
### APPELLANT

### V.

### STATE OF TEXAS,
### APPELLEE

### APPELLANT'S BRIEF

**ORAL ARGUMENT REQUESTED**

 DAL RUGGLES
 SBN: 24041834
 LAW OFFICE OF DAL R RUGGLES
 1103 NUECES ST.
 AUSTIN, TEXAS 78701
 PH: (512) 477-7991
 FAX:(512) 477-3580
 DAL@RUGGLESLAW.COM

 ATTORNEY FOR APPELLANT
 ON APPEAL ONLY

# TABLE OF CONTENTS

**PAGE**

Parties to Trial Court's Final Judgment……………………………………………… 3

Index of Authorities……………………………………………………………… 4

Statement of the Nature of the Case……………………………….……......... 6

Statement of of the Point of Error…………………………………………..... 8

Statement of Facts…………..…………………………………………….…..... 9

Summary of the Argument ………………………………………………....... 25

Point of Error Number One…………………………………....…………27

Conclusion……………………………………………………...………… 41

Prayer for Relief…………………………………………………...………… 41

Certificate of Service……………………………………………………. 42

Certificate of Compliance………………………………………………... 42

# PARTIES TO TRIAL COURT'S FINAL JUDGMENT

In accordance with Tex.R.App.Proc. 38.1(a), Appellant certifies that the following is a complete list of the parties and their counsel:

(a) the State of Texas represented by:

    Ms. Elizabeth Whited – trial attorney
    State Bar No. 24060823
    Williamson County District Attorney's Office
    405 Martin Luther King Drive
    Georgetown, Texas 78626

    Mr. Danny Wallace Smith, Jr. – trial attorney
    State Bar No. 24046867
    Williamson County District Attorney's Office
    405 Martin Luther King Drive, Box 1
    Georgetown, Texas 78626

(b) Mr. James Alan Weatherford, represented by:

    Mr. Daniel H. Wannamaker – trial attorney
    State Bar No. 20834300
    Wannamaker & Associates
    1012 Rio Grande Street
    Austin, Texas 78701

    Dal Ruggles – appellate attorney
    State Bar No. 24041834
    The Law Office of Dal R Ruggles
    1103 Nueces St.
    Austin, Texas 78701

# INDEX OF AUTHORITIES

**CASES** **PAGE**

Albrecht v. State, 486 S.W.2d 97 (Tex.Crim.App. 1972)……................................ 34

Cox. v. State, 931 S.W.2d 349, 357 (Tex.App.-Fort Worth 1996), pet. dism'd ….36

Crank v. State, 761 S.W.2d 328, 341 (Tex.Crim.App. 1988)................................34

Dinnery v. State, 592 S.W.2d 343, 353 (Tex.Crim.App. 1979)
(opinion on rehearing)...........................................................................................39

Ex parte Cruz, 739 S.W.2d 53 (Tex.Crim.App. 1987)..........................................28

Ex parte Walker, 777 S.W.2d 427 (Tex.Crim.App. 1989) ....................................28

Ex parte Welborn, 785 S.W.2d 391 (Tex.Crim.App. 1990) ..................................28

Ex parte Ybarra, 629 S.W.2d 943 (Tex.Crim.App. 1982) ....................................28

Fuller v. State, 224 S.W.3d 823 (Tex.App.- Texarkana 2007, no pet.) ..................39

Freeman v. State, 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003) ......................28

Haley v. State, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005)…………….…….... 35

Hernandez v. State, 988 S.W.2d 770 (Tex.Crim.App. 1999) ................................27

Mallett v. State, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001)………….....................27

Menefee v. State, 287 S.W.3d 9, 13 (Tex.Crim.App. 2009)………...................... 39

Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397
(1986)………………………………………………………………………...28

Poole v. State, 974 S.W.2d 892, 897 (Tex.App.-Austin 1998, pet. ref'd)………...36

Ramirez v. State, 301 S.W.3d 410 (Tex.App.-Austin 2009, no pet.) ....................27

Rogers v. State, 991 S.W.2d 263, 265 (Tex.Crim.App. 1999)..................................35

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)…………………………………………………………………27, 38

Tempin v. State, 711 S.W.2d 30 (Tex.Crim.App. 1986)…………….....................34

**CONSTITUTIONAL PROVISIONS, STATUTES AND RULES**     **PAGE**

Tex.R.App.Proc. 38.1(a)…………………….…………………….…...................3

Tex.R.App.Proc. 33.1……………………………………………………...………31

Tex.R.Ev. 403…………………………………………………………………..36

Tex.R.Ev. 404(b) ..................................................................................34

Tex.R.Crim.Proc. 37.07…………………………………………………...………35

**TO THE HONORABLE JUDGES OF SAID COURT:**

COMES NOW, James Alan Weatherford, Appellant in this cause, by and through his Attorney, and files this, his brief on original appeal.

## STATEMENT OF THE NATURE OF THE CASE

Appellant was charged by indictment on May 8, 2014 in Cause No. 14-0874-K368 with 4 counts of possession with intent to promote child pornography and 22 counts of possession of child pornography.[1] (C.R. pp. 5-16) On July 21, 2014, Appellant entered a plea of Guilty to counts 2-4 in the indictment charging possession with intent to promote child pornography and counts 5-26 in the indictment charging possession of child pornography. Appellant's plea was given open to the court with no agreed recommendation as to punishment. (C.R. pp. 75-78) (R.R. IV, pp. 13-14) Count 1 of the indictment charging possession with intent to promote child pornography was dismissed. (C.R. p. 79) (R.R. IV, p. 15)

On July 23, 2014, Appellant waived his right to a jury trial for punishment and went to the court for a hearing on punishment. At the culmination of the hearing, the trial judge found Appellant guilty on counts 2, 3 and 4 in Cause No. 14-0874-K368 for the offense of possession with intent to promote child pornography. The trial judge also found Appellant guilty on counts 5-26 in Cause

---

[1] Appellant was also charged by indictment in Cause No. 12-04665-K277 with 9 counts of promotion of child pornography and 15 counts of possession of child pornography. Appellant pled guilty to the lesser included charge of possession of child pornography in counts 1-9 and possession of child pornography in counts 10-24. As in Cause

No. 14-0874-K368 for possession of child pornography. (R.R. VI, p. 108) Appellant was sentenced to twenty years confinement in the Texas Department of Corrections on counts 2, 3 and 4 to run consecutively. Appellant was sentenced to five years in the Texas Department of Corrections on counts 5-26 to run concurrent with Appellant's sentence in count 4 of the indictment. (R.R. VI, pp. 109-110) Appellant gave a timely notice of appeal on August 20, 2014 and filed a timely motion for a new trial on August 21, 2014. (C.R. pp. 102-106)

## STATEMENT OF THE POINT OF ERROR

## POINT OF ERROR NUMBER ONE

**APPELLANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY ALLOWING APPELLANT TO PLEAD GUILTY TO THE CHARGE OF PROMOTION OF CHILD PORNOGRAPHY WITH THE STRATEGY OF ARGUING INSUFFICIENT EVIDENCE TO SUPPORT HIS PLEA DURING THE PUNISHMENT HEARING.**

## STATEMENT OF FACTS

Appellant was charged in two indictments. In Cause No. 14-0874-K368 Appellant was charged with 4 counts of promotion of child pornography and 22 counts of possession of child pornography. The State later waived one count of promotion of child pornography. In Cause No. 12-0465-K277 Appellant was charged with 9 counts of promotion of child pornography and 15 counts of possession of child pornography. In Cause No. 14-0874-K368 Appellant entered a plea of guilty to counts 2, 3, 4 for promotion of child pornography and 5-26 for possession of child pornography. In Cause No. 12-0465-K277 Appellant entered a plea of guilty to counts 1-9 for the lesser-included charge of possession of child pornography and 10-24 for possession of child pornography. Appellant waived his right to a jury trial, and elected to have his sentence determined by the Court. (R.R. IV, pp. 5-15)

During his guilty plea, Appellant testified that he was arrested on March 21, 2012 when officers from the Attorney General's Office came to his house and executed a search warrant. In the process of executing the search warrant Appellant was questioned about suspected child pornography found on a computer located in the house. Appellant stated he had inadvertently seen the images periodically while searching for other things and that he tried to delete them whenever he saw them. Ultimately, the investigation found over 25,000 images containing child pornography in addition to various videos and other media files. (R.R. IV, pp. 16-

9

19)

Two days following Appellant's plea, a punishment hearing was held. After both parties waived opening, the State called Sergeant Ross Behrens. Sergeant Behrens testified that he worked with the Texas Attorney General's Office and was assigned to the Cyber Crime Unit. He went on to say that as a member of the Cyber Crimes Unit he investigated crimes committed with computers that involved children. He explained that he often worked in an undercover capacity, particularly when working online solicitation cases. (R.R. V, pp. 8-10)

Sergeant Behrens testified that he received specialized training through Internet Crimes Against Children, investigative techniques, Undercover Chat and several different peer-to-peer trainings. He described a peer-to-peer network as a file-sharing network where someone can get online and download programs in order to communicate though the computer with someone else. They can trade documents, images, videos or whatever they see fit. He explained that these programs are not preloaded on a computer but rather, have to be sought out and downloaded from a website. Sergeant Behrens also testified that while these programs can be used to share child pornography, they can also be used for other purposes. He testified that child pornography is sought out and actively downloaded by a person and that in his experience, he has never seen an internet-user inadvertently come into possession of files containing child pornography.

(R.R. V, pp. 11-16)

Sergeant Behrens testified that in a typical investigation he employs proprietary software to scan file-sharing networks in order to identify I.P. addresses that are sharing files containing suspected child pornography. (R.R. V, pp.17-18) He then initiates a download of the files and if confirmed to contain child pornography, he sends the internet-provider an administrative subpoena to obtain information on the subscriber. This is done to confirm who had the IP address assigned to them on the day Sergeant Behrens connected and downloaded the file. With this information he obtains and executes a search warrant of the location from which the files were downloaded. (R.R. V, pp. 23-30)

Sergeant Behrens testified that in this case he obtained a search warrant after downloading between 120-130 images and videos of child pornography from Appellant's IP address from November of 2011 until February of 2012. He said the search warrant was executed on March 21, 2012. (R.R. V, pp. 38-40) While the search warrant of Appellant's residence was being executed, Sergeant Behrens interviewed Appellant. He read Miranda warnings to Appellant and told him the reason for the search. Appellant admitted to Sergeant Behrens that he had used peer-to-peer networks. Specifically, he admitted using several network programs including eDonkey, the same program that Sergeant Behrens used to obtain child pornography from Appellant's IP address. He also admitted he had seen thousands

of child pornography files but that he never sought them out, that he tried to delete them, and that they would randomly pop up while he was searching through adult pornography. Sergeant Behrens testified that he had never heard of child pornography popping up when someone visits a legal adult pornography site. (R.R. V, pp. 47-51)

Sergeant Behrens testified that two computers were found in Appellant's dining room, one computer was in the master bedroom shared by Appellant's wife and daughter, and two computers were found in Appellant's bedroom. One of the computers was in his bedroom and the other was in the bedroom closet. The State offered several photos taken of the rooms where the computers were found as well as photos of the computers themselves into evidence as State's Exhibits No. 5-20. The defense voiced a relevance objection. The court overruled the objection and allowed the exhibits into evidence. (R.R. V, pp. 52-58)

Appellant was arrested on the same day the warrant was executed. Sergeant Behrens said he made the decision to arrest Appellant based upon files containing child pornography that were found on the computer that Appellant admitted was used exclusively by him. (R.R. V, p. 62)

Sergeant Behrens testified that he went back to search Appellant's residence on two more occasions. He identified State's Exhibits No. 2 and 3 as being consent forms to search for computer-related material that Appellant's wife, Mrs.

Bobbie Weatherford, had signed and said the searches were conducted on April 3, 2012 and April 23, 2012 respectively. He also identified State's Exhibit No. 4 as being a child's drawing that was wrapped around a computer hard drive to conceal it. Defense counsel objected to Exhibit No. 4 saying it was irrelevant and prejudicial outweighing probative value. The trial court overruled the objection. (R.R. V, pp. 62-65)

Sergeant Behrens went on to say that items recovered during the follow up search included a Maxtor internal hard drive, 3 CDs, and an 8 millimeter camera. Sergeant Behrens was asked to describe what was on the videos recorded by the camera to which defense counsel objected. Counsel for Appellant argued the camera videos depicted extraneous acts not associated with the counts Appellant was charged with and therefore, should be inadmissible based upon Texas Rules of Evidence 403, 404, 405 and 802. Defense counsel also objected based upon Fifth Amendment, Sixth Amendment and due process violations. The State testified that the images in the camera videos were not child pornography but could be construed as improper photography. The State argued that the videos were relevant and being offered as an explanation to the sexual gratification and the manufacturing and promotion of the child pornography in Counts 2, 3 and 4 of the indictment that Appellant pled guilty to. The State felt that as such, the videos showed Appellant's motive. The State also confirmed that the video had been

presented to defense counsel in 2013 along with a Rule 404 notice.  The trial court overruled the defense objection and Sergeant Behrens was allowed to describe the content of the videos.  One video was of children in a pool across a street.  There were two or three girls in the video wearing bikinis.  There was another video of a neighbor girl helping her father tie down a boat.  There was also a video of Appellant's daughter in which she was completely nude.  (R.R. V, pp. 66-70)

Detective Behrens was asked if Appellant ever gave any indication he had inappropriately touched his daughter, S _ _ _ .  Defense counsel again objected based on Rule 403.  The court overruled the objection.  Detective Behrens said that during the course of his investigation he saw indications that Appellant had touched his daughter in a way that was sexual in nature.   He went on to say he saw a progression in Appellant's case, going from downloading child pornography, to making child pornography, to touching a child.  (R.R. V, pp. 71-73)

On cross-examination, Sergeant Behrens testified that in his opinion the officers who accompanied him in executing the search warrant could have been more thorough in their search and that some of the evidence was collected on dates subsequent to the execution of the search warrant. (R.R. V, pp. 82-88)  Sergeant Behrens confirmed that in the process of downloading files containing adult pornography from a file-sharing network it is possible that child pornography could be mixed in with files of adult pornography. (R.R. V, p. 92)  He also

confirmed that the video of Appellant's daughter that was in the camera was not "lewd." Sergeant Behrens agreed that she was nude and dancing around but not exposing genitalia, etc.. (R.R. V, pp. 92-95)

The next witness called by the State was forensics investigator, Sergeant Steven Ried. As a Computer Forensics Certified Examiner working for the Attorney General's Office, Sergeant Ried's job was to preview computers seized during execution of the search warrant, and to then thoroughly search all of the digital media that was seized during the investigation. His training and experience included being an EnCase Certified Examiner, an AccessData Certified Examiner and Computer Forensics Certified Examiner through the International Association of Computer Investigative Specialists. (R.R. V, pp. 97-100) Sergeant Ried testified that in the course of previewing the computer seized at Appellant's home he identified files containing child pornography and that based on his forensic investigation he determined the computer in question to be that of Appellant's. (R.R. V, pp. 108-109) Sergeant Ried testified that he had no way of doing digital forensics on a videotape such as an 8-millimeter film but he was able to do forensics on the other items of interest. (R.R. V, pp. 116-117)

During the State's direct examination, Sergeant Ried identified the items taken from Appellant's home that he performed forensic analysis on and whether or not he found child pornography on them. He also identified items 25, 27 and 28

as those that were later recovered from the consent-to-searches. Those items included CDs, DVDs and two hard drives. (R.R. V, pp. 117-122) Sergeant Ried identified State's Exhibits No. 21-66 as being DVD's and CD's containing images and videos he found during his forensic analysis of the items in Appellant's case. The State tendered to opposing counsel and offered into evidence the photos as State's Exhibits No. 30-66 and the DVDs as State's Exhibits No. 21-29. (R.R. V, pp. 125-126)

Defense counsel took Sergeant Ried on voir dire regarding the admission of Exhibit's No. 21-66. Sergeant Ried testified that he was not able to identify each item of evidence in terms of which particular count it was tied to. He could not say if the State's Exhibits No. 21-66 were all tied to counts in the indictment that Appellant had pled to. For this reason defense counsel argued that the State had not set the proper predicate for their admission into evidence and objected. The State argued that all of the images found by Sergeant Ried to be child pornography were within the scope of their direct in a sentencing hearing. Additionally, the State testified that the 49 exhibits being introduced were the 49 counts in which Appellant pled guilty. The court overruled defense counsel's objection and admitted State's Exhibits No. 21-66 into evidence. (R.R. V, pp. 126-131)

During lengthy questioning by the State, Sergeant Ried provided testimony identifying the specific images and videos in exhibits 21-66. He testified as to

what each image and video depicted and why it would be classified as child pornography. In all, Sergeant Ried said he found Appellant to be in possession of more than 25,000 images of child pornography. (R.R. V, pp. 137-162)

Next, the State asked Sergeant Ried if he found a video or image of Appellant's daughter during his analysis. He testified that he did. Defense counsel objected saying the video or image of Appellant's daughter was associated with a count in the indictment that was dismissed for lack of evidence. The State argued that the evidence was relevant to punishment. The court overruled Appellant's objection. (R.R. V, pp. 163-164)

Sergeant Ried testified that he learned one of Appellant's daughters was named J _ _ _ when he saw it as the title of one of the videos. He testified that other videos classified as child pornography involved Appellant's other daughter, S _ _ _ , and were found on items no. 1, 25, 28 and that he believed those videos were titled "SL6" and then a number. The State then offered Exhibits No. 67, 68, and 69 into evidence. These exhibits were described as DVD's of three videos titled SL6-1, SL6-2 and SL6-3. Defense counsel did not object to their admittance. Sergeant Ried testified that the videos labeled SL6-1, SL6-2 and SL6-3 were child pornography because the female child in them had her breasts and vagina exposed towards the camera. Sergeant Ried testified the videos would also be classified as manufacturing of child pornography due to the fact that a female child in the

videos was being posed. Sergeant Ried testified that Appellant could be seen in the video manipulating the camera, directing the child to pose in front of the camera, and in one instance, adjusting his penis through his pants. (R.R. V, pp. 165-170)

The State then turned Sergeant Ried's attention toward the video he deemed of interest that had Appellant's daughter, J _ _ _, in it. Defense counsel objected saying the video was irrelevant, hearsay, and prejudicial because it is associated with a count that was dismissed. The State responded that everything was relevant in punishment and that the video would be relevant even in guilt/innocence because it showed motive, intent, plan and scheme of not only manufacturing the video but of what he was going to do with it. The court overruled defense counsel's objection. Sergeant Ried testified that the video of J _ _ _ was named "J _ _ .avi" and the State tendered the video to defense counsel and offered it into evidence as State's Exhibit No. 70. Once again, defense counsel objected saying there would be hearsay on the video. The court asked if there was audio. The State said no. The video was then published to the court and described as not being child pornography. On the video a female child could be seen changing into a bathing suit but her genitals or breasts are never exposed because she steps out of view of the camera. Sergeant Ried testified that he believed he found the video on items No. 1, 25, and 28. He also testified that there were "known.met" files on

these three items. He explained that a "known.met" file is one used by eDonkey or the eMule program to keep track of information about files that are either uploaded or downloaded. Sergeant Ried testified that in the "known.met" files there were images and videos being traded by Appellant to other individuals and though he did not recall if he saw evidence that the video "J _ _ .avi" was being traded, uploaded, or downloaded in those "known.met" files, he did recall that an image was. The image that was being shared was a snapshot of the "J _ _ .avi" video. The image was a snapshot of J _ _ _ getting undressed where you could see her buttocks. (R.R. V, pp. 172-178)

Sergeant Ried testified that he also discovered chats that Appellant had engaged in on these peer-to-peer networks. The "GigaTribe" chat file was found on Item No. 1 and Item No. 25. Item No. 1 was the Dell desktop from appellant's bedroom and item 25 was the Seagate hard drive. State's Exhibit No. 71, described as "about ten pages worth of chat text" was shown to Sergeant Ried who testified that he recognized it and described it as a chat that appears to be between two persons by the name of Chris and "Tornado." State's Exhibit No. 71 was tendered to defense counsel and offered into evidence. Defense counsel objected. Sergeant Ried went on to explain why he believed Tornado was actually Appellant. He explained that among the many chats he viewed, Tornado was the character or screen name consistently used. That led Sergeant Ried to believe that Tornado was

the user of the computer where the chats were located. According to Sergeant Ried, Tornado was the holder of an account that requested information and at times provided information. He testified that Tornado shared the snapshot from J _ _ .avi. This fact, along with the fact that Tornado was the consistent user name on the Dell desktop that was shown to be Appellant's computer, led Sergeant Ried to determine that Tornado was Appellant. The State offered the chat into evidence as State's Exhibit No. 71 to which the defense objected, saying the chat contained hearsay and that the proper predicate had not been laid. (R.R. V, pp. 180-183)

The State argued that the chat was not hearsay because it was a statement by Appellant. The State went on to say that "the statements go to identity, intent, motive, plan and scheme of the Defendant, not of the other party, and it's incriminating statements against himself." Finally, the State argued they were not offering it for the truth of the matter asserted. They were offering it for the context of what "J _ _ .avi" was filmed and uploaded for, and what SL6-1 was filmed and uploaded for. The court expressed a concern that the chat did not deal with intent to distribute videos, SL6-1, 2 and 3. (R.R. V, pp. 180-185) Again, the State argued that while the chat was not about SL6 it would show his motive of what he planned to do with it. When asked by the court if there was any information that the chat was done at or anywhere near the time that videos SL6-1, 2, and 3 were made the State answered "no." The State explained that the films were made over

a period of at least seven years and that although the chat was not about the SL6 videos it was a bad act that was relevant during a punishment hearing. The court reminded Appellant's counsel that this was a punishment hearing without a jury. Defense counsel argued that Rule 403 was "still in play" to which the court responded "I know it does, but I'm going to go ahead and overrule the objection and allow it in". State's Exhibit No. 71, the chat between Appellant "Tornado" and Chris, was admitted into evidence and published to the court by having Sergeant Ried take the role of Tornado and read statements made by him, and State's prosecutor, Danny Smith, take the role of Chris and read his statements. (R.R. V, pp. 183-199)

Sergeant Ried testified that at the end of the chat Tornado requested pictures of Chris sexually gratifying himself with J _ _ 's pictures. The State offered photos into evidence as State's Exhibit No. 72 through 75. State's Exhibit No. 72 was described as a school photo of Appellant's daughter. State's Exhibit No. 73 was described as the same school photo but this time with an adult male penis over her mouth. State's Exhibit No. 74 was a photo of the same picture depicted in State's Exhibit No. 73 with semen on it. State's Exhibit No. 75 was semen on a screen capture of "J _ _ .avi." Defense counsel objected to all photos on the basis of Rule 403, hearsay, Fifth Amendment, due process and relevance. The court overruled the objections. Sergeant Ried testified that Tornado requested Chris

21

send him pictures of him enjoying "J _ _ .avi."  Sergeant Ried went on to say that although "J _ _ .avi" did not reach the definition of child pornography, it was his belief that it was made and uploaded for sexual gratification.  Regarding some of the specific content of the chat, Sergeant Ried agreed that Appellant made a statement that amounted to a confession to indecency by contact with his daughter, J _ _ _, when he said to Chris that he had touched her breast.  Defense counsel objected based on Rule 403, Rule 404, Art. 37.07(1) and Fifth Amendment.  The State countered that Appellant's confession on the chat was already in evidence.  The court agreed and overruled the objection.  (R.R. V, pp. 200-202)

Sergeant Ried testified that in his training and experience he had also been made aware of a progression in behaviors.  In his forensic analysis of Appellant's case he saw a progression of behavior.  He saw a progression from hiding the camera when videotaping his oldest daughter, to having the camera out while videotaping his youngest daughter.  Sergeant Ried testified that during the chat Appellant said he wanted to have sexual relationships with his daughter but that he thought it was "too risky".  (R.R. V, pp. 203-204)

On cross-examination, Sergeant Ried testified that six items were found in Appellant's home that contained child pornography.  He went on to testify that while his forensics investigation was able to determine which computers contained child pornography, he could not determine who in the household was using which

computer at any given time.  And while he could sometimes determine which downloaded files had actually been viewed, he could not determine who viewed them.  He also could not say which items contained which particular State's exhibit without having the file names with him.  (R.R. V, pp. 207-213)

Sergeant Ried testified that some of the pornography found during his forensic analysis could have come from countries outside the United States and that some of it could have been made years ago.  He testified that there may have been legal adult pornography in the items he analyzed and that it is possible for someone to download images without looking at each and every one.  (R.R. V, pp. 210-214)

When asked by the defense, Sergeant Ried confirmed that State's Exhibit 70, the video titled "J _ _ .avi" was not child pornography.  He testified the videos titled "SL6" and introduced into evidence as State's Exhibits No. 67, 68 and 69 were child pornography however.  Sergeant Ried said that he found no evidence that any of the three videos deemed child pornography had been uploaded or shared.  (R.R. V, pp. 214-216)

At the end of the punishment hearing and after both sides had rested, Appellant's counsel made a motion to the court for a directed verdict in Cause No. 14-0874-K368.  The defense explained to the court that although Appellant pled guilty to 3 counts of promotion of child pornography there was insufficient

evidence to support his plea. Counsel asked the court to "direct a verdict at least as to the second degree nature of it and reduce it to a consideration for a third degree possession of child pornography." Defense counsel argued that the only evidence of intent to disseminate child pornography was "bootstrapped" through the count that was dismissed because of lack of evidence. For this reason Appellant's attorney asked the court to consider Counts 2, 3, and 4 as possession of child pornography rather than possessing it with intent to distribute and promote. The court responded that Appellant had already pled guilty to those crimes and as such, the guilt/innocence phase of evidence was over. The court noted that only punishment was being addressed at that point. Appellant's motion for a directed verdict was denied. (R.R. VI. pp. 81-83)

After both sides presented closing arguments the court sentenced Appellant to 20 years imprisonment for each count of promotion of child pornography that Appellant pled guilty to in Cause No. 14-0874-K368. These sentences were to run consecutively. Appellant was sentenced to 5 years imprisonment for each count of possession of child pornography he pled to in Cause No. 14-0874-K368 and Cause No. 12-0465-K277. These sentences were to run concurrently. (R.R. VI, pp. 109-110)

## SUMMARY OF THE ARGUMENT

In his sole point of error, Appellant argues that he received ineffective assistance of counsel when his attorney allowed him to plead guilty to the charge of promotion of child pornography with the strategy of going to the court for punishment and arguing during the punishment hearing that there was insufficient evidence to support his plea.

Appellant pled guilty to 3 counts of promotion of child pornography and 22 counts of possession of child pornography in Cause No 14-0874-K368. Appellant did not have an agreement as to punishment but instead, chose to waive his right to a jury and go to the court for a punishment hearing. During the course of the hearing Appellant's attorney argued against the admission of any evidence that he felt was particularly egregious or might tend to show Appellant's intent to promote child pornography. Appellant based his objections on multiple rules of evidence, statutes, and constitutional rights that were not effective during a punishment hearing. Ultimately, Appellant's counsel motioned the court for a directed verdict arguing the evidence presented did not show Appellant promoted child pornography and thus, the court should assess punishment only for the lesser charge of possession of child pornography.

Following this ill-advised strategy removed the possibility of effectively arguing there was insufficient evidence to show Appellant promoted child

pornography and in doing so, prejudiced Appellant and affected the outcome of his case.

# POINT OF ERROR NUMBER ONE

**APPELLANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY ALLOWING APPELLANT TO PLEAD GUILTY TO THE CHARGE OF PROMOTION OF CHILD PORNOGRAPHY WITH THE STRATEGY OF ARGUING INSUFFICIENT EVIDENCE TO SUPPORT THE PLEA DURING THE PUNISHMENT HEARING.**

Appellant incorporates by reference the Statement of Facts set out earlier in this brief. Claims of ineffective assistance of counsel are governed by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Strickland standard applies in noncapital sentencing proceedings. *Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim.App. 1999); *Ramirez v. State*, 301 S.W.3d 410 (Tex.App.-Austin 2009, no pet.). Under the two-pronged Strickland standard, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *Strickland,* 466 U.S. at 687-688.

## A. Deficient Performance

The record on direct appeal is normally insufficient to enable the appellate court to determine that counsel's representation was so deficient as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Because the trial record was not

developed for the purpose of preserving or litigating this claim the record almost never speaks to the considerations behind the trial tactics the defendant's counsel employed. *Freeman v. State,* 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003). In reviewing claims of ineffectiveness of counsel at the punishment phase of trial, the effectiveness is gauged by the totality of the representation of the accused. *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim.App. 1989); *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App. 1987) However, even a single error can render counsel's representation ineffective if sufficiently egregious and harmful to the defendant. *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986). The record in this case does speak to counsel's deficient representation and reveals a single sufficiently egregious error in the form of an ill-advised strategy-namely, that Appellant could plea guilty to a charge of promotion of child pornography and then prevail on an insufficient evidence argument during a punishment hearing to the court. This strategy is clearly shown by defense counsel's arguments during the hearing and punctuated by his motion for directed verdict at the end of the hearing.

An effective trial attorney must be familiar with the rules of evidence and trial procedure. *Ex parte Welborn,*785 S.W.2d 391, 393 (Tex.Crim.App. 1990) ; *Ex parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Crim.App. 1982). The record in appellant's case contains multiple examples of defense counsel's misunderstanding

of the rules of evidence and governing law as he argues points of admissibility in an effort to support his lack-of-evidence strategy. From the beginning of the punishment hearing Appellant's attorney pursued the strategy of keeping out evidence of extraneous bad acts that he should have realized were either clearly admissible during a punishment hearing or had already been offered into evidence. Although rarely specific as to their grounds for inadmissibility, Appellant's objections focused primarily on Texas Rules of Evidence 404(b) and 403, as well as Texas Code of Criminal Procedure Section 37.07.

The State's first witness, Sergeant Ried, testified that State's Exhibits No. 21-66 were images and videos of child pornography he found during his forensic analysis of computers, hard drives, floppy discs, DVDs and CDs taken from Appellant's home. When the State offered these exhibits into evidence defense counsel took the witness on voir dire and ultimately objected to the admission of State's Exhibits No. 21-66 saying the proper predicate had not been set as to what images or videos were contained in the exhibits. Specifically, defense counsel wanted to know exactly which count in the indictments did each photo or video correspond to. The court seemed puzzled by the objection.

> THE COURT: No. I just wanted to know why is it an issue if your client has already pled to possession of those particular items?

> MR. WANNAMAKER: "Because I want to make sure that there's no extraneous acts or photos contained in this. So I'm questioning the predicate, whether or not it's actually pertaining to

this indictment. So I'm just trying to make sure that nothing gets admitted into evidence without objection that is not part of this case."
R.R. V, pp. 127-128

When asked by the court if all the videos and photos of State's Exhibits No. 21-66 were tied to counts on the indictment that Appellant had pled to the State responded that they were. The State argued that every image found by Sergeant Ried during his forensic analysis of the hard drives taken from Appellant's home to be child pornography were within the scope of direct questioning during a sentencing hearing. The court overruled Appellant's objection and after State's Exhibits No. 21-66 were admitted into evidence, Sergeant Ried was asked about the total number of images he observed during his forensic analysis. Defense counsel once again objected and gave several reasons for his objection. (R.R. V, pp. 127-131)

> MR. WANNAMAKER: Objection, Your Honor, calls for evidence; we think it's a violation of the motion in limine; it's extraneous; 403, prejudice outweighs the probative value; 37.07(1); Eighth Amendment; Sixth Amendment; Fifth Amendment; Article 1, Section 10 of various constitutions; and it's hearsay.

> MS. WHITED: And, Your Honor, I guess at this point it would be relevant to make this ruling for all of his future objections on this line of questioning. Because the State provided notice under 404, 609 of other bad acts and other uncharged offenses and gave notice of all of these, and he's had all of these images for the last year and a half. So if we could just have a running ruling on the mentioning of other images and videos, that would probably be --

> THE COURT: And I guess I look at it a little differently because it's not a jury. And so I am going to overrule the objection and

allow you to go into that line of questioning.

Appellant's counsel not only based his objection on rules that did not apply, he failed to provide the specificity required for a complaint to be preserved for appellant review. Texas Rule of Appellate Procedure 33.1 provides that:

> "As a prerequisite to presenting a complaint for appellate review, the record must show that:
> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context;

Here, Appellant's counsel "shot-gunned" his objection by referring to multiple rules and statutes as well as articles of "various" constitutions making it difficult, if not impossible, to know the specific grounds for the objection. Additionally, the State made it clear that defense counsel had been given notice of the other bad acts and uncharged offenses they intended to introduce and in fact, had had the images for more than a year.

The State also offered an image from a video titled "J _ _ .avi." into evidence as State's Exhibit No. 70. The video "J _ _ .avi" was evidence associated with count one of the indictment in Cause No. 14-0874-K368. Count one was dismissed prior to the hearing and as such, Defense counsel argued the video was an extraneous act and should not be admitted.

MR. WANNAMAKER: I objected earlier and I'm going to

object again. I think that's immaterial, irrelevant, it's 403, it's hearsay. The count was dismissed.

MS. WHITED: Your Honor, this is a punishment hearing. Everything is relevant in punishment. It's also relevant in guilt/innocence, if we were there, because it shows his motive, intent, plan, and scheme of not only manufacturing this video but of what he was going to do with it.

THE COURT: I'll overrule the objection.

MR. WANNAMAKER: If I may just have a brief rejoinder, it may be punishment, but it's not a free-for-all and donnybrook. There are rules of evidence and there are cases that apply to the rules of evidence to a punishment hearing. Best I can tell, hearsay still applies in some instances in the punishment hearing, that's why I keep renewing it. I also have objected numerous times on Rule 403, as well as 404, 405 and 37.07(1). There are parameters in which the government or the State can get into, and I think that they're trying to bootstrap something into the case. It's been dismissed and it's extraneous, and I think the probative value is nil compared to the prejudicial effect.

THE COURT: I'm going to overrule the objection.

Moments later the defense renewed the objection.

MR. WANNAMAKER: I'm going to renew the objections, strenuously at this point. The State dismissed this out of the indictment. And what they're trying to do, and I'll be quite candid, is they're trying to bootstrap SL6 into something more than what it is by introducing evidence of another video that they deemed insufficient to bring into evidence and take to trial. So I'm going to object, 403, it's going to have hearsay on it -- I'm just telling you now, it's going to have hearsay on it, and I'm going to renew the objection again, and I think that hearsay is going to be more prejudicial than the probative value. So I object.

MS. WHITED: Your Honor, the same rebuttal: It is a video of child erotica. It sets the predicate of motive, intent, plan, and scheme

of why we charged promotion of child pornography with the SL6 series.

THE COURT: Is there audio on this one?

MS. WHITED: No, Your Honor.

THE COURT: Okay. I overrule the objection. (R.R. V, pp. 172-175)

After State's Exhibit No. 70 was published to the court Sergeant Ried testified that while he did not recall seeing any evidence of the video being traded, he did recall that a snapshot from the video was traded. He went on to say that a chat file was found on the computer taken from Appellant's bedroom. The text of this chat was offered as State's Exhibit No. 71. Defense counsel objected saying the chat was hearsay and not associated with the counts in the indictment that Appellant pled to. Again, the court referred to the fact that the hearing was addressing punishment, not guilt/innocence and after considering Appellant's Rule 403 objection, the court admitted State's Exhibit No. 71 into evidence.

THE COURT: I think that's my problem, Mr. Wannamaker, is it is a punishment hearing and it's not a jury. And I understand your concerns, but --

MR. WANNAMAKER: But 403 still is in play, Judge.

THE COURT: I know it does, but I'm going to go ahead and overrule the objection and allow it in. So I'll admit State's Exhibit 71. (R.R. V, pp. 181- 186)

While Appellant's counsel continually objected based on multiple grounds, the reasons given most often included Rule 404(b), Rule 403, and Art. 37.07. Texas Rule of Evidence 404(b) provides that:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity , or absence of mistake or accident, provided that upon timely request by the accused in a criminal case reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction."

A defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Cran*k *v. State,* 761 S.W.2d 328, 341 (Tex.Crim.App. 1988). Extraneous offense evidence carries with it the inherent risk that a defendant may be convicted because of his propensity for committing crimes generally – i.e. his bad character, rather than for the commission of the charged offense, courts have historically been reluctant to allow evidence of an individual's prior bad acts or extraneous offenses. *Tempin v. State,* 711 S.W.2d 30 (Tex.Crim.App. 1986); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim.App. 1972). For this reason, evidence of extraneous crimes, wrongs, or acts is not admissible at the guilt-innocence phase to prove the character of a person in order to show action in conformity therewith but is admissible to prove other matters, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident if the accused is given reasonable notice of the State's intent to introduce the evidence.  Tex.R.Ev. 404(b)

Defense counsel's reliance on Rule 404(b) is misplaced however as this rule speaks more to guilt/innocence than punishment.   Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed.  *Haley v. State,* 173 S.W.3d 510, 515 (Tex.Crim.App. 2005*), citing Rogers v. State,* 991 S.W.2d 263, 265 (Tex.Crim.App. 1999).   As such, admissibility of evidence during a punishment hearing is guided primarily by Tex.R.Crim.Proc. 37.07 3(a) not Tex.R.Ev. 404(b). Article 37.07 specifically allows the introduction of extraneous offenses or prior bad acts into evidence during the punishment phase of a case as long as the court deems such matters relevant to sentencing.

> "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act".  Tex. R. Crim. Proc.  37.07 sect 3(a)

Appellant's counsel included Art. 37.07 with his Rule 404(b) and Rule 403 based objections but didn't seem to have a clear understanding of its purpose.  Because of

the great deal of deference Art. 37.07 gives to the court regarding admissibility of whatever extraneous evidence it "deems" relevant, it is poorly suited as a defense argument against admissibility. Here the record clearly shows that the court found the evidence offered by the State to be relevant.

Admissibility of punishment phase evidence that the trial court deems relevant is still subject to a Rule 403 analysis.[2] *Cox. V. State,* 931 S.W.2d 349, 357 (Tex.App.-Fort Worth 1996), pet. dism'd. While the record in the instant case shows that the court considered Appellant's Rule 403 objection, a balancing test is not required to be on the record. In overruling a Rule 403 objection, it is assumed the trial court performed a balancing test. *Poole v. State* 974 S.W.2d 892, 897 (Tex.App.-Austin 1998, pet. ref'd).

Defense counsel's strategy culminated at the end of the punishment hearing with his motion to the court for a directed verdict. At this point the defense explained to the court in detail the idea that although Appellant pled guilty to 3 counts of promotion of child pornography, a second degree felony, there was insufficient evidence to support his plea and therefore only a charge of possession of child pornography, a third degree felony, should be considered. The State strongly disagreed:

MR. WANNAMAKER: I'd like to make a motion first.

---

[2] Texas Rule of Evidence 403 states that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

THE COURT: Okay. Go ahead.

MR. WANNAMAKER: The motion concerns a little background. There was one indictment brought and then a second indictment brought, so I'm referencing the second indictment that begins with 14. Their Counts 2, 3 and 4 -- Count 1 having been dismissed -- those counts allege promotion of child pornography. The Defendant pled guilty to it. The Court has now found him guilty. We'd ask the Court to direct a verdict at least as to the second degree nature of it and reduce it to a consideration for a third degree possession of child pornography. There was no evidence and it was adduced during the sentencing hearing, which made this amply clear, the only evidence that they have of any intent to disseminate that information was bootstrapped through the count that was dismissed and dismissed because of lack of evidence. So we'd ask the Court to consider Counts 2, 3 and 4 as possession of child pornography rather than possessing it with intent to distribute and promoting.

MS. WHITED: Your Honor, I am appalled that the Defense attorney would have his Defendant plea guilty to Counts 2, 3 and 4, waiving that argument, giving the State notice that guilt and innocence was no longer an issue, and then hold our presentation of punishment evidence against us and then ask the Court to find him not guilty of promotion. That is a sneaky, backdoor way around the jury trial that we were set for on Monday. In response, there was evidence that he both manufactured and had the intent to promote.

THE COURT: Right. And I guess from my perspective, Mr. Wannamaker, your client's already pled guilty to those crimes. And so the guilt/innocence phase of evidence is over. We're talking about punishment at this point in time, and so I'm going to deny your motion.

It is evident from the record that Appellant's counsel hoped to prevail on a

sufficiency of the evidence argument during the punishment hearing even though

Appellant had already pled guilty to the charges. It is also evident from the record

that in the process of pursing this strategy he demonstrated a lack of understanding

regarding rules of evidence and trial procedure. Clearly, his representation of Appellant was deficient.

## B. Reasonable Probability of a Different Outcome

Under the second prong of Strickland, an individual must show that the deficient performance of counsel prejudiced the defense. A defendant establishes prejudice under the second prong if he shows that a reasonable probability exists that, but for the deficient performance, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. at 694

The fact that Appellant was prejudiced by the unprofessional conduct of his counsel is unquestionable. Defense counsel's argument throughout the hearing was that the only evidence showing Appellant promoted child pornography was associated with the count that was dismissed by the State and as such, there was insufficient evidence to support a conviction for promotion of child pornography. The record shows that this issue was considered by the court and may have been a viable argument. However, this was an argument that should have been made during a guilt/innocence trial, not a punishment hearing. By pleading guilty to the charge the argument was effectively waived. Time and time again, when defense counsel objected to the admission of evidence, the court reminded Appellant's

counsel that they were conducting a punishment hearing, not a guilt/innocence trial, and for that reason found the evidence relevant and admissible.

The law is clear that when a defendant executes a judicial confession acknowledging that he has read the indictment and has committed every act alleged in the indictment and the trial court takes judicial notice of each confession, sufficient evidence exists to support his guilty pleas. *Fuller v. State*, 224 S.W.3d 823 (Tex.App.-Texarkana 2007, no pet.); *Menefee v. State,* 287 S.W.3d 9, 13 (Tex.Crim.App. 2009). A judicial confession, standing alone, provides sufficient evidence to support the trial court's judgment. See *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex.Cr.App. 1979)(opinion on rehearing). Appellant's plea of guilty and judicial confession to the indictment constituted a waiver of all complaints regarding the sufficiency of the evidence to support his conviction.

Here it is apparent that trial counsel did not understand the law and procedure regarding what could or could not be successfully argued during punishment. Appellant's guilty plea and judicial confession not only removed any sufficiency-of-the-evidence argument regarding Appellant's guilt, it subjected any relevance objection during the punishment hearing to the very broad language of Art. 37.07. Had Appellant been given the proper advice as to how to contest

sufficiency of the evidence, it is not unreasonable to conclude that he would not have pled guilty and he would not have entered a judicial confession to each count.

Trial counsel's performance not only impacted Appellant's decision whether to plead guilty or not guilty, it impacted his decision to waive a jury and to testify. Had Appellant received proper legal advice from his attorney Appellant would have made a different decision and the outcome would have been different. Trial counsel's performance severely prejudiced his own client's interests and certainly affected the outcome of the case.

## CONCLUSION

Having nominal representation at trial or during a hearing does not suffice to render such representation constitutionally adequate.  A party whose legal counsel is unable to provide effective representation is in no better position than someone who has no counsel at all, and indeed, when counsel performs during a plea setting and punishment hearing as counsel did in this case, may be worse off.  Here, appellant's trial attorney harmed him significantly.  This point of error should be sustained.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Appellant respectfully prays that this Honorable Court sustain his point of error, reverse the trial court and remand the case for a new trial.

Respectfully submitted,


/s/ Dal Ruggles
Dal Ruggles
Attorney at Law
1103 Nueces St.
Austin, Texas 78701
Telephone:  (512) 477-7991
Facsimile:  (512) 477-3580
SBN:  24041834


**ATTORNEY FOR APPELLANT**
**JAMES ALAN WEATHERFORD**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief on Original Appeal was delivered, via e-file, to the Williamson County District Attorney's Office on this the 1st day of June, 2015.

/s/ Dal Ruggles
Dal Ruggles


## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 8,800 words, as calculated by the word count function on my computer.

/s/ Dal Ruggles
Dal Ruggles